CENTURY-NATIONAL INSURANCE COMPANY, Plaintiff-Appellant, v. JAMES JOSEPH TRACY et al., Defendants and Petitioners-Appellees (Daniel G. Suber, Indiv. and d/b/a Daniel G. Suber and Associates, Respondent-Appellant).—CENTURY-NATIONAL INSURANCE COMPANY, Plaintiff-Appellant, v. JAMES JOSEPH TRACY et al., Defendants-Appellees.

Second District   Nos. 2—99—1257, 2—99—1289 cons.

Opinion filed October 6, 2000.

John J. Foley, of Maurides & Foley, L.L.C., and Daniel G. Suber and Sean R. Gannon, both of Daniel G. Suber & Associates, both of Chicago, for appellants.

Peter R. Vogel, of Vogel & Vogel, of Wheaton, for appellee James Joseph Tracy.

JUSTICE GALASSO delivered the opinion of the court:

Plaintiff, Century-National Insurance Company (Century), brought a declaratory action against defendants, James Joseph Tracy (James), Debra Tracy (Debra), and CMDK Development Corporation (CMDK), alleging that James was not entitled to underinsured motorist benefits under a policy issued to CMDK. Century appeals from a directed finding entered by the trial court at the conclusion of Century's case and the award of Supreme Court Rule 137 (155 Ill. 2d R. 137) sanctions against Century and its attorney, Daniel Suber.

The record on appeal reveals the following pertinent facts. CMDK was co-owned by James and his wife, Debra. They were the sole principals and employees of CMDK, which was owned and operated as a partnership. The record contains no evidence that, during the relevant period of time, CMDK was incorporated. In procuring a business auto insurance policy for a 1987 Chevy half-ton pickup truck (insured vehicle) allegedly owned by CMDK, certain information regarding the application for insurance was provided to several insurance agents/brokers and, ultimately, to plaintiff. The application for insurance was signed by "D. Tracy." Debra was the only driver listed on it. On September 28, 1993, plaintiff issued a business auto policy to CMDK that covered the insured vehicle. This policy provided comprehensive, liability, collision, medical payments, and uninsured/underinsured motorist coverage from September 28, 1993, to September 28, 1994. The policy was a named-driver policy and specifically required that all drivers of the covered vehicle be reported to plaintiff and endorsed on the policy.

On February 24, 1994, the driver of the insured vehicle was involved in a two-car accident in Aurora, Illinois. There were no passengers in the insured vehicle. The driver presented police with a driver's license that stated he was Kevin Tracy. The driver reported some injuries and was taken to Mercy Center Hospital. Ambulance records indicated that the driver told ambulance personnel that he was Kevin Tracy. X-ray records at Mercy Center Hospital showed that the name Kevin Tracy was crossed out in certain places and replaced with the name James Tracy. Laura Tijerna was the operator and sole occupant of the other vehicle involved in the subject accident. Subsequently, James filed a complaint for personal injuries against Tijerna arising out of the subject accident. Later, Tijerna, insured through Economy Preferred Insurance Company, paid James $50,000, the single-person limit of her policy, in settlement of the lawsuit.

On December 28, 1995, James filed a complaint against Century pursuant to the underinsured motorist provision of the policy for injuries he was alleged to have sustained in the subject traffic accident. On November 21, 1996, after the parties had failed to reach a settlement, James made a demand upon Century for arbitration, per terms of the policy. On March 3, 1998, Century filed a complaint for declaratory judgment against James and CMDK. This complaint sought a declaration that Century owed no obligations to defendants under the policy. The complaint alleged that defendants provided insufficient evidence that James Tracy, rather than Kevin Tracy, was involved in the subject accident and that defendants had misrepresented that James was the individual involved in the accident.

On April 3, 1998, Century filed a first amended complaint, in which Debra was added as a defendant. Counts I and II realleged that defendants provided insufficient evidence that James was the individual involved in the accident. In counts III, IV, and V, Century alleged that Debra had materially misrepresented CMDK as being a corporate entity for the purposes of obtaining insurance and had materially omitted the fact that James, an unlicensed motorist, was the true owner and driver of the truck.

On January 20, 1999, an evidentiary hearing was held on counts I and II of the first amended complaint. Arguments related to the allegations in counts III, IV, and V of Debra's misrepresentation of CMDK's corporate status, her omission of information related to James's status as an unlicensed driver, and his operation of the insured vehicle were reserved for a hearing on June 2, 1999. At the close of Century's case at the January 20 hearing, the trial court granted defendants' oral motion for a directed finding.

On April 16, 1999, Century filed a second amended complaint for declaratory judgment. Therein, Century realleged that Debra had misrepresented CMDK as being a corporation. Further, Century alleged that Debra materially omitted James's name from the insurance application and that James was a nonpermissive user of the insured vehicle.

On June 2, 1999, a hearing was held as to the remaining counts of Century's second amended complaint. After Century completed its case in chief, wherein it unsuccessfully attempted to introduce evidence that James had provided the information used in completing the application for insurance, the trial court granted defendants' motion for a directed finding. On August 5, 1999, Century filed a motion for leave to file a third amended complaint to include allegations that James had misrepresented CMDK as being a corporation, that James had materially omitted his name from being a named driver of the insured vehicle, and that defendants had violated the terms of the policy because James, who did not have a valid driver's license at the time of the accident, had no reasonable belief that he was entitled to drive the insured vehicle. The trial court continued the matter until October 14, 1999, ordering Century to file a petition pursuant to Illinois Supreme Court Rule 183 (134 Ill. 2d R. 183) explaining therein why it should be permitted to file an amended complaint after the requisite filing date. On October 14, 1999, the trial court denied the motion for leave to file a third amended complaint.

On July 2, 1999, defendants filed a motion for Rule 137 (155 Ill. 2d R. 137) sanctions against Century and its attorney, Daniel Suber. On July 15, 1999, Century filed a cross-motion for Rule 137 sanctions

against defendants and their attorneys. After a hearing on October 14-15, 1999, the trial court awarded defendants $2,000 in sanctions against Century and its attorney, Daniel Suber, and denied the cross-motion for sanctions.

On appeal, plaintiff raises the following arguments, namely, (1) whether the trial court's directed finding that James, rather than Kevin Tracy, his brother, was driving the insured vehicle at the time of an accident on February 24, 1994, was against the manifest weight of the evidence; (2) whether the trial court abused its discretion in barring evidence that James made false representations in applying for the subject insurance policy; (3) whether the trial court's directed finding of June 2, 1999, was against the manifest weight of the evidence; (4) whether the trial court abused its discretion in denying Century leave to file a third amended complaint; (5) whether the trial court abused its discretion in awarding Rule 137 sanctions; and (6) whether the trial court abused its discretion in compelling disclosure of and admitting into evidence a letter from plaintiff's attorney Suber to Century concerning the pending litigation. Due to our determinations of issues 1, 2, and 5, discussed below, we do not need to address issues 3, 4, and 6.

Century first argues that the trial court's directed finding of January 20, 1999, that James rather than Kevin Tracy was the driver of the insured vehicle was against the manifest weight of the evidence. Defendants respond that the evidence clearly supported the trial court's directed finding.

■ Initially, we note that in such cases the court of review must determine whether the trial court erred in deciding that plaintiff failed to show a *prima facie* case. *Kokinis v. Kotrich,* 81 Ill. 2d 151, 154 (1980). A *prima facie* case is one in which the plaintiff has presented at least some evidence on every element essential to its cause of action. *Kokinis,* 81 Ill. 2d at 154. A trial court's decision on this matter will not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis,* 81 Ill. 2d at 154.

On January 20, 1999, an evidentiary hearing was held in regard to counts I and II of the first amended complaint, which sounded in misrepresentation and asserted that James's action for underinsured motorist coverage was not supported by the evidence. Specifically, these counts alleged that the individual driving the insured vehicle was in fact Kevin Tracy, the brother of James. Laura Tijerna, the driver of the other vehicle involved in the collision, positively identified Kevin Tracy in open court as the driver and sole occupant of the insured vehicle at the time of the accident. She stated that she had independently identified Kevin Tracy as the driver and sole occupant of

the insured vehicle while she waited outside the courtroom before the start of the proceedings. Aurora police officer Brian Hester, the first police officer to arrive at the scene of the accident, testified that he was "90% sure" that Kevin Tracy was the driver and sole occupant of the insured vehicle. Further, ambulance and emergency room records indicated that Kevin Tracy was transported by ambulance to Mercy Center Hospital's emergency room, where he received medical treatment. Certain records from Mercy Center Hospital showed that Kevin Tracy's name had been crossed out and James's name substituted for it.

Additionally, Dr. Jeffrey Kapp, a dentist who had been in general practice for over 20 years, testified that he had reviewed the X rays of the driver of the insured vehicle taken immediately after the accident at Mercy Center Hospital. Dr. Kapp stated that the Mercy Center Hospital records gave no indication as to why dental X rays were taken. He opined that these X rays were of such poor quality that they were of no diagnostic value. Dr. Kapp stated that he reviewed James's dental X rays that had been taken three or four years prior to the accident. According to Dr. Kapp, those portions of the hospital's dental X rays that were readable, when compared to James's previous dental X rays, did not appear to reflect the same dental conditions as those that existed in his previous dental X rays.

In order to accommodate the schedule of defendants' expert witness, Dr. Stefan Turcic, the trial court permitted defendants to present his testimony during Century's case. Dr. Turcic stated that he had been James's dentist since 1992. He stated that both the X rays he had taken of James's mouth and the dental X rays taken at Mercy Center Hospital showed crowns at teeth numbers 8 and 9. He further testified that he had inspected the mouth of Kevin Tracy in the hallway of the courthouse just prior to the hearing. According to Dr. Turcic, the cursory inspection indicated that Kevin Tracy did not have crowns on teeth numbers 8 and 9. Dr. Turcic opined that the dental X rays taken at Mercy Center Hospital depicted James Tracy rather than Kevin Tracy.

At the end of Century's case, defendants orally moved for a directed finding. The trial court stated *inter alia*:

> "On one level there is eyewitness testimony in the case of Miss Tijerna, a positive identification of Kevin as the operator of the vehicle, in the case of the police officer, Officer Hester, a somewhat equivocal, but fairly strong identification. On the other hand, the plaintiff [*sic*] has established that the person who was driving the automobile had two crowns, two posts in his two front teeth, teeth number 8 and 9 as the dentist identified those teeth. That is irre-

buttable and unrefuted. It is also unrebuttable [sic] and irrefutable that James has two such posts and two such crowns, although there might be some distinction as to whether his were the screw type or not, but he has two. It is also absolutely unrebutted that Kevin does not."

Century first points out that the trial court, in granting the motion for a directed finding, relied on Dr. Turcic's testimony and that normally such testimony would have been presented during the defendant's case. Century maintains that it was improper for the trial court to use such evidence in determining whether plaintiff had presented a *prima facie* case. Plaintiff further contends that the circumstantial evidence of the driver's identity should not have been considered by the trial court where there was "uncontradicted, reasonable and unimpeached direct testimony of the eyewitnesses who identified the driver." In response, defendants argue that the trial court properly granted a directed finding, as the testimony of Laura Tijerna and Officer Hester was equivocal and the testimony of Dr. Turcic was "significant and relevant."

■ The issue is whether plaintiff presented enough evidence to make a *prima facie* case that should have withstood a motion for a directed finding. Contrary to defendants' assertion and the trial court's perspective, we do not find the testimony of Ms. Tijerna and Officer Hester particularly equivocal. Officer Hester said he was 90% sure that Kevin was driving the vehicle, and Ms. Tijerna was quite emphatic that Kevin, rather than James, was the driver. Additionally, the records of the ambulance and the Mercy Center Hospital emergency room list the name of Kevin Tracy as the person being transported and treated, respectively. This was more than enough evidence to meet the *prima facie* standard. However, the trial court did not base its determination of whether the standard had been met on such evidence. Rather, in ruling on the motion for a directed finding, it considered the testimony of Dr. Turcic, whose appearance on defendants' behalf was taken out of order to accommodate his schedule. Section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1992)) provides in pertinent part, "In all cases tried without a jury, defendant may, *at the close of plaintiff's case*, move for a finding or judgment in his or her favor." (Emphasis added.) While the parties have not cited a case directly on point, nor has our research uncovered one, we conclude that the plain meaning of this statute is that only the evidence presented by plaintiff will be considered by the trial court in deciding a motion for a directed finding. By failing to follow the proper procedure in deciding the subject motion, the trial court "jumped to the end of the evidence," essentially depriving plaintiff of any op-

portunity to put on a rebuttal case. Accordingly, we find that the trial court erred in granting defendants' motion for a directed finding and remand this cause of action for further proceedings.

However, that is not the end of our consideration of the issues raised by plaintiff, as the trial court made other rulings that affected plaintiff's ability to pursue fully this case.

Century further argues that the trial court erred in denying its motion to file a third amended complaint. In effect, Century's argument regarding the trial court's denial of its efforts at the June 2, 1999, hearing to conform the pleadings to the proof is subsumed by this argument, and, thus, we will address only the contention concerning the denial of the motion for leave to file the third amended complaint. Century maintains that it meets all of the four factors of the test for determining whether a complaint should be amended. In response, defendants argue that the trial court acted properly in refusing to allow Century leave to file its third amended complaint.

■ There is no absolute right to amend a pleading. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 460 (1995). However, amendments to pleadings should be liberally allowed to permit parties to present fully their causes of actions. *Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 885 (1994). Moreover, there is a strong policy that favors an adequate hearing of a litigant's claim on the merits. *Goldberg*, 264 Ill. App. 3d at 885. In determining whether to permit an amendment to the pleadings, a trial court considers (1) whether the amendment cured a defective pleading; (2) whether the amendment prejudiced or surprised the other parties; (3) whether the amendment was timely; and (4) whether previous opportunities to amend were identifiable. *Reich v. Gendreau*, 308 Ill. App. 3d 825, 830 (1999). The decision to allow amendment of the pleadings rests within the sound discretion of the trial court, and its decision will not be reversed absent a showing of an abuse of that discretion. *Indiana Insurance Corp. v. Hydra Corp.*, 245 Ill. App. 3d 926, 932 (1993). The test to be applied in determining whether there has been an abuse of discretion is whether the allowance of the amendment furthers the ends of justice. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 48 (1992).

As indicated above, Century filed its second amended complaint on April 16, 1999. Therein, Century realleged that Debra had misrepresented CMDK as being a corporation. Additionally, Century alleged that Debra had materially omitted James's name from the insurance application and that James was a nonpermissive user of the insured vehicle. On June 2, 1999, an evidentiary hearing was held on the remaining counts of the second amended complaint. In his opening

statement, Century's counsel stated that the evidence would show that (1) the subject insurance application was completed by agent Mike Trojanowski based upon information given to him by James; (2) Trojanowski, who was aware of James's prior driving record, warned him that the policy's coverage would not include him; (3) James had not been a licensed driver in Illinois since 1980; (4) James had been cited twice for driving with a revoked license; (5) the subject policy was a named-driver policy; and (6) there was no information about James on the application or accompanying documents conveyed to Century. In his opening statement, counsel for defendants argued that "[Century's] case is based on omissions and misrepresentations made by James." Defense counsel then moved for a directed finding, arguing that the second amended complaint made reference only to Debra. The trial court denied the motion, adding that defense counsel was free to object on the grounds of materiality and relevance "to the extent that any proofs that are adduced which are inconsistent with the theory framed by the pleadings."

Insurance agent Mike Trojanowski was then called to testify for Century. Trojanowski initially testified that he had been defendants' insurance agent for approximately eight years. He stated that he had written the subject Century-National policy down. When Century sought to elicit testimony regarding statements made to him by James regarding the application for insurance, defense counsel objected, stating that no such allegations were in the second amended complaint. The trial court sustained the objection, finding that the complaint's allegations of misrepresentation related to Debra rather than James. Century made an offer of proof, wherein Trojanowski testified regarding the conversation he had with James during the application process. Trojanowski acknowledged that James gave him the information regarding the policy's coverage, including the type of vehicle and the "type of risk it is." According to Trojanowski, James stated that he needed coverage "for a job or something like that." Trojanowski told James that he couldn't insure him because he knew he didn't have a license. "So we [put Debra on the application]," Trojanowski testified, "[a]nd then I *** suggested that he go out and get a license pretty quick, you know." Trojanowski could not recall whether James or Debra signed the application. Century's counsel moved to conform its complaint to the proofs. The trial court denied the motion.

Further, Thomas Zaura testified that he was an "insurance underwriter, commercial line," for the Buschback Insurance Agency of Oak Lawn, Illinois. Zaura testified that he was contacted by Trojanowski regarding the subject application for insurance. Zaura explained that, in this instance, Trojanowski was acting as a broker. He further stated

that Trojanowski "had no particular authority with any of the companies" that Zaura was using, although Zaura himself did. Subsequently, the trial court sustained defense counsel's objection to questions concerning the conversation Zaura had with Trojanowski in relation to the insurance application. In an offer of proof, Zaura stated that he was told by Trojanowski that the insured would be CMDK Corporation and that the only named driver was Debra. There was no request for James to be included as a driver under the policy. Zaura testified that he did not convey any information about James to Century because he "didn't know of a James Tracy."

Wendell Langman testified that he was a "commercial auto manager" with Century. Langman stated that the subject policy was a "named-driver" policy and that "the insured agrees to report all drivers to the company before they drive vehicles scheduled on this policy." Defense counsel objected to the questions that asked Langman to interpret the language of the subject policy. In an offer of proof, Langman stated that the policy's guidelines contained provisions that required all drivers to have a valid Illinois driver's license and that all drivers must be appropriately licensed for the type of vehicle driven. On cross-examination, Langman was asked if this policy extended coverage to unreported drivers who were using a vehicle with the permission of the insured. Langman responded that, under the policy, coverage did not extend to an unreported driver who was using the vehicle with permission. Later, Langman conceded that he would consider a co-owner of CMDK to be a named insured under the policy. On redirect examination, Langman testified that, if the subject insurance application did not list James as a driver, then Century would not have any means of determining the risk identified with him.

Debra testified that she was the sole owner of "CMDK Construction Incorporated." She testified that Mike Trojanowski had been her insurance agent for approximately eight years. She denied that she had talked to Trojanowski regarding the application for the policy. She further denied that she signed the application. James testified that CMDK had never been incorporated.

Century again moved to conform the pleadings with the proofs, and the trial court denied the motion. The trial court then granted defendants' motion for a directed finding on counts III, IV, and V.

On August 5, 1999, Century filed a motion for leave to file a third amended complaint to include allegations that James misrepresented CMDK as being a corporation, that James materially omitted his name from being identified as a named driver of the insured vehicle, and that defendants violated the terms of the policy because James was without a valid driver's license at the time of the accident and had no

reasonable belief that he was entitled to drive the insured vehicle. On August 19, 1999, a hearing was held on the motion. Century's attorney explained the reason for amending the complaint:

"[T]he reason why we are bringing this motion now is to make sure it is announced the individual who testified and gave us the information that it was Debra Tracy who had made the material misrepresentation and omissions for the hearing of June 2nd, turned and flipped and said at the date of the hearing on June 2nd that it is, in fact, James Tracy. So that's why we are asking to amend the pleadings at this time."

The trial court required Century, pursuant to Supreme Court Rule 183 (134 Ill. 2d R. 183), to file the reasons why the third amended complaint had not been filed. At a hearing on October 14, 1999, the trial court found that Century had not made "a proper showing of good cause" and denied the motion.

■ We now review the above-cited elements of the test for determining whether Century's motion to file a third amended complaint should have been granted. The first element concerns whether the amendment would have cured a defective pleading. At the June 2, 1999, hearing, agent Trojanowski, during an offer of proof, stated that James, rather than Debra, provided the information from which the application for insurance was completed. Century's third amended complaint would have contained counts alleging that James made material misrepresentations and omitted material information in providing Trojanowski with information for the completion of the insurance application. Clearly, such an amended complaint would have cured the principal defect in Century's second amended complaint, namely, that the subject allegations were against Debra rather than James.

The next element of the test is whether the amendment prejudiced or surprised other parties. As James had always been a named defendant in this litigation, we cannot conclude that the proposed third amended complaint would have either prejudiced or surprised him.

Timeliness of the amendment is the next factor to consider. It is uncontradicted that, an hour before the June 2, 1999, hearing, agent Trojanowski told Century's attorney that James rather than Debra provided the information with which the subject insurance application was completed. Up until this time, the evidence regarding who had given the information to Trojanowski to complete the application was, at best, confusing. In an affidavit dated May 1, 1998, Debra stated that she had not given Trojanowski the information. A further statement in the affidavit indicated that Debra "believed" that when agent Trojanowski was completing the application he used information "which was in his possession from previous transactions." However,

in their answers to Century's interrogatories, dated March 10, 1999, defendants were asked, "What representative of CMDK Development Corp. procured a policy of insurance from Century *** in 1993?" Their response was, "Defendants do not recall specifically, but believe that *Debra Tracy ordered the policy* by means of a telephone call." (Emphasis added.) Further, in an affidavit dated May 4, 1999, Trojanowski stated that he was told by both James and Debra Tracy that "at the time [of the application] that the CMDK business was incorporated, and that the incorporated business owned the prospective insured vehicle, the 1987 Chevy pickup." Trojanowski further stated that he advised both James and Debra that "the policy [he] procured on their behalf would not cover James Tracy, and that James Tracy would not be insured under any policy." Additionally, Trojanowski stated that he did not remember witnessing Debra Tracy signing the application "on her behalf." After receiving the approved Century policy, he "forwarded it to Debra Tracy." Added to this evidence are the facts that the insurance application is signed "D. Tracy" and that it lists only Debra Tracy as a named driver.

From this record, who told what to agent Trojanowski in completing the application was quite unclear until just before the June 2, 1999, hearing on counts III, IV, and V of the second amended complaint. Admittedly, it appears that Century could have been more aggressive in determining whether James had given Trojanowski the information for the application. However, it is also apparent that defendants and possibly Trojanowski could have been more forthcoming regarding this matter during discovery. At the subject hearing, armed with the knowledge imparted by Trojanowski only an hour before the hearing, Century attempted to conform the pleadings to the proof by having agent Trojanowski testify that James had given him the information. Finding itself in a "Catch—22" type of situation, Century was unable to get such testimony into evidence, as the trial court sustained defendants' continuing objections to testimony showing that James gave the subject information on the basis of Century's failure to plead such allegations in the second amended complaint. Two months later Century filed a motion for leave to file a third amended complaint. Said complaint would have made the relevant allegations against James rather than Debra. Under these circumstances, we conclude that Century's motion to amend its pleading was timely.

The final factor is whether previous opportunities to amend were identifiable. Based on our discussion of the timeliness factor, we find that no previous opportunities for Century to amend were identifiable.

In conclusion, we decide that, based on our review of the above-

cited factors, the trial court abused its discretion in denying Century's motion to file a third amended complaint.

■ Finally, we address the argument of Century and its attorney, Daniel Suber, that the trial court erred in awarding defendants sanctions of $2,000 pursuant to Rule 137 (155 Ill. 2d R. 137). In so doing we will have to reiterate some of the facts that related to the previous issue. Century and Suber maintain that they had a reasonable basis to allege in the second amended complaint that Debra had been the source of false information in the insurance application. Defendants contend that the Rule 137 sanctions are supported by the record.

Initially, we note that Rule 137 serves to penalize the litigant or attorney who pleads false or frivolous matters, or who brings suit without any basis in the law. *In re Estate of Wernick*, 127 Ill. 2d 61, 77 (1989). Rule 137 imposes an affirmative duty on attorneys and litigants alike to conduct an investigation of the facts and the law prior to filing an action, pleading, or other paper. *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 108-09 (1998). The standard for evaluation of a party's conduct under this rule is one of reasonableness under the circumstances existing at the time the pleading was filed. *Schneider*, 298 Ill. App. 3d at 109. The decision to impose sanctions rests within the sound discretion of the trial court, and that determination will not be overturned on review absent an abuse of discretion. *Schneider*, 298 Ill. App. 3d at 109.

In their motion for Rule 137 sanctions, defendants alleged that Century and Suber were subject to sanctions for (1) alleging that James was not driving the insured vehicle at the time of the accident; (2) asserting the legal position that misrepresenting the corporate status of CMDK was a material misrepresentation and voided coverage under the policy; and (3) alleging that Debra signed the application for insurance and provided the material misrepresentations and omissions therein. After a hearing, the trial court found that only the third ground was sanctionable. The trial court stated that it based its conclusion in part on a letter from attorney Suber to Century, dated April 1, 1999. The letter contains the statement:

> "One complicating factor in our motion is Debra Tracy's denial that she either filled out or signed the insurance application. The facts accumulated to date suggest that the application was filled out by the agent, then signed by the agent as well prior to forwarding it to Century-National."

While this statement indicates that attorney Suber was concerned about the propriety of filing a second amended complaint in which there were allegations that Debra was the source of the alleged misinformation and omissions on the insurance application, the record

indicates that there was some evidence supporting those allegations until an hour before the June 2, 1999, hearing. To wit, there were the answers to Century's interrogatories, dated March 10, 1999, wherein defendants stated that they "believed" Debra had been the one to order the policy "by means of a telephone call." Agent Trojanowski, upon whom Century had to rely, stated in his affidavit, which was completed on May 4, 1999, that the information he received came from both Debra and James. After being told by Trojanowski an hour before the June 2, 1999, hearing that James, rather than Debra, gave the subject information, attorney Suber unsuccessfully attempted to conform the second amended complaint to the proof.

We conclude that Century and Suber were justified in maintaining the counts against Debra until the point at which Trojanowski clearly stated that James rather than Debra gave the subject information. At the hearing, Suber then essentially tried to drop the counts against Debra and direct the substance of those counts against James but was blocked in his attempt to do so. Under these circumstances, the trial court's imposition of sanctions was an abuse of discretion.

For the reasons stated above, we reverse the Du Page County circuit court's orders for a directed verdict and for the awarding of sanctions, and we remand the cause of action for further proceedings consistent with this opinion.

Reversed and remanded.

INGLIS and GEIGER, JJ., concur.