No. 2--00--0588

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

SCOTT RICHMOND and KRISTINE ) Appeal from the Circuit Court

RICHMOND, as the Parents and ) of Kane County.

Next Friends of Blythe Richmond, )

)

Plaintiffs and )

Petitioners-Appellants, )

)

v. ) No. 98--L--660

)

DELORES CABAN, )

)

Defendant, )

) 

(Copley Memorial Hospital,  ) Honorable

Respondent-Appellee, and Dreyer ) Gene L. Nottolini,

Medical Center, Respondent). ) Judge, Presiding.

________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Petitioners, Scott Richmond and Kristine Richmond, as the parents and next friends of their minor daughter, Blythe Richmond, appeal the trial court's judgment enforcing the hospital lien filed by respondent Copley Memorial Hospital for medical expenses Blythe incurred.  On appeal, petitioners argue that the lien is void because (1) the "Hospital Agreement" between Copley and  petitioner's insurance policy administrator, respondent Dreyer Medical Center (Dreyer), required Copley to file a claim with Dreyer before seeking reimbursement from Blythe's estate, (2) section 2--8(a) of the Health Maintenance Organization Act (HMO Act) (215 ILCS 125/2--8(a) (West 1998)) prohibits Copley from enforcing the lien, and (3) Copley's allegedly arbitrary filing of a lien against Blythe's estate contravenes public policy.  We agree with petitioners' second argument, and we reverse and remand the cause with directions.

FACTS

Most of the facts of the case are undisputed.  On September 16, 1998, Scott Richmond was driving his car in which his 12-year-old daughter, Blythe, rode as a passenger.  Another car, driven by defendant, Delores Caban, struck Richmond's vehicle.  Blythe and her father sustained personal injuries, and Blythe was treated at Copley, where she incurred $24,238 in medical expenses.  At the time of the accident, Blythe was covered by her parents' Blue Cross/HMO Illinois health insurance policy, and petitioners had timely paid all premiums due.  The policy, which was administered by Dreyer, designated Copley as petitioners' "provider hospital."  The parties dispute whether petitioners' policy covered the medical services Copley rendered, and the record does not reveal whether the trial court decided the issue.

At the time of the accident, Dreyer directed petitioners and other policyholders to use Copley's medical services, and, in exchange, Copley charged Dreyer reduced rates for the services.  The Hospital Agreement set forth the procedure under which Copley would seek reimbursement for covered medical expenses when the policyholder was negligently injured by a third party.  The contract provides in relevant part:

"[Copley] and [Dreyer] mutually agree to cooperate in the effective implementation of those provisions of [Dreyer's] contracts with Managed Care Organizations relating to coordination of benefits and other third party claims.  With regard to Covered Services for which [Dreyer] is not the party with primary liability, [Copley] shall seek payment for such services from the party with primary liability.  For Covered Services for which [Dreyer] has secondary liability pursuant to the coordination of benefits provisions, it is understood that [Dreyer's] secondary liability is limited to the amount of payment it would have made to [Copley] had [Dreyer] been primary, less payment made by the primary insurer and any co-payment payable by member.

* * *

For covered services for which a Third-Party has primary responsibility, [Dreyer] and [Copley] agree to pursue claims first with Third-Party insurer and hold patient harmless until settlement of the liability.  [Dreyer] agrees to then reimbursement [
sic
] [Copley] the difference between the amount [Copley] has independently recovered and the amount owed under this agreement, if any."

Petitioners sued Caban and the owner of the vehicle that she drove, and the complaint purportedly assigned to Blythe petitioners' right to collect and recover damages for her medical expenses.  The parties voluntarily dismissed the owner of the car, and Caban's automobile insurer settled Blythe's claim for $50,000, which was the limit of Caban's policy.

Pursuant to section 1 of the Hospital Lien Act (Lien Act) (770 ILCS 35/1 (West 1998)), Copley and Dreyer each filed a lien against the settlement proceeds.  On September 16, 1999, petitioners filed a motion to adjudicate the liens, arguing that Copley's refusal to submit a claim to Dreyer for Blythe's medical expenses was a bad- faith attempt to circumvent the rule that this court had recently announced in 
N.C. v. A.W.
, 305 Ill. App. 3d 773 (1999).  In 
N.C.
, this court held that a hospital may not assert lien rights in a minor's estate if the minor's insurer has already reimbursed the hospital for the medical services rendered.  
N.C.
, 305 Ill. App. 3d at 775.  Petitioners alternatively argued that the rule prohibiting an insurer from filing a lien against a minor's personal injury settlement also barred Copley's hospital lien.

Copley responded that its lien rights in Blythe's estate were preserved because Dreyer had not reimbursed Copley for Blythe's medical expenses.  The trial court enforced Copley's lien and awarded the hospital $16,667, representing one-third of the $50,000 settlement.  The court extinguished Dreyer's lien, and Dreyer is not a party to this timely appeal.

ANALYSIS

A lien is a legal claim upon the property of another for payment or in satisfaction of a debt.  A lien attaches only to a verdict, judgment, award settlement, or compromise secured by or on behalf of the injured person, and a hospital lien can be created only when a recovery is made.  
N.C.
, 305 Ill. App. 3d at 775.  When an injured person settles a claim, the total amount of all hospital liens filed under the Lien Act shall not exceed one-third of the settlement.  770 ILCS 35/1 (West 1998)).

In 
N.C.
, the minor plaintiff was injured in an automobile accident, and he incurred $22,551 in medical expenses when he was treated by the hospital.  Pursuant to an agreement with the hospital, the plaintiff's insurer tendered $4,200 to the hospital in full payment of the medical expenses.  The plaintiff sued the defendant driver, and the hospital filed a lien against the proceeds of the pending personal injury suit.  
N.C.
, 305 Ill. App. 3d at 774.

Under the hospital's contract with the plaintiff's insurer, the insurer encouraged its policyholders to use the hospital, and the hospital billed the insurer at reduced rates.  The provider contract further released a policyholder, such as the plaintiff, from liability for uncovered expenses after the insurer paid the hospital at the agreed rate.  The hospital was authorized to bill a policyholder only for deductibles, coinsurance, copayments, and charges for services that were not approved or covered.  
N.C.
, 305 Ill. App. 3d at 775.

After the plaintiff filed a petition to adjudicate the hospital's lien, the defendant driver's liability carrier settled the plaintiff's claim for the policy limit of $100,000.  The trial court extinguished the hospital's lien against the settlement proceeds, concluding that there was no debt for which the hospital could seek recovery.  In affirming the judgment, this court agreed that the hospital's lien was void because the plaintiff's debt to the hospital was satisfied when the plaintiff's insurer paid the hospital.  Because the hospital bargained for and assented to the reduced rate in exchange for the insurer's referrals, we rejected the hospital's claim that the result was inequitable.  
N.C.
, 305 Ill. App. 3d at 776.

Contrary to Copley's denials, the evidence suggests that, if Copley had submitted a claim under petitioner's health insurance policy, the Hospital Agreement would have obligated Dreyer to pay Copley an amount less than one-third of Blythe's settlement proceeds.  It is clear that Copley attempted to maximize its recovery by filing a lien against Blythe's settlement proceeds rather than billing Dreyer for the child's medical expenses.

Petitioners argue that the Hospital Agreement required Copley to bill Dreyer before filing a lien against Blythe's estate.  The contract provided that Copley would pursue its claim against Caban's insurer and hold petitioners harmless for the medical expenses until petitioners' claim was settled.  After petitioners settled Blythe's claim against Caban, the Hospital Agreement obligated Dreyer to reimburse Copley for the difference between the amount due under the agreement and the amount Copley recovered from Caban and her insurer.

Under the Hospital Agreement, Copley had a 
right
 to reimbursement from Dreyer for Blythe's medical costs after petitioners settled Caban's liability.  However, nothing in the portion of the Hospital Agreement that the parties have submitted to this court suggests that Copley was 
obligated
 to bill Dreyer.  Furthermore, petitioners offer no evidence and do not argue that Blythe's admission to the hospital was conditioned on a promise that Copley would bill Dreyer.

Petitioners complain that Copley has not supplied this court with the complete Hospital Agreement.  However, as appellants, petitioners have the burden to present a sufficiently complete record to support a claim of error, and, in the absence of such a record on appeal, we will presume that the trial court's order was in conformity with the law and had a factual basis.  See 
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).  Any doubts that arise from the incompleteness of the record will be resolved against the appellant.  
Foutch
, 99 Ill. 2d at 392.

Although we conclude that the Hospital Agreement did not require Copley to bill Dreyer, our analysis does not end there.  Petitioners contend that section 2--8(a) of the HMO Act bars the enforcement of Copley's hospital lien against Blythe's estate.  Section 2--8(a) incorporates a "hold-harmless" clause into every HMO-medical provider agreement.  The clause states as follows:

" 'The provider agrees that in no event, including but not limited to nonpayment by the organization of amounts due the hospital provider under this contract, insolvency of the organization or any breach of this contract by the organization, shall the hospital provider or its assignees or subcontractors have a right to seek any type of payment from, bill, charge, collect a deposit from, or have any recourse against, the enrollee, persons acting on the enrollee's behalf (other than the organization), the employer or group contract holder for services provided pursuant to this contract except for the payment of applicable co-payments or deductibles for services covered by the organization or fees for services not covered by the organization.' "  215 ILCS 125/2--8(a) (West 1998).

The parties agree that Blythe was an "enrollee" and that the Hospital Agreement incorporated the hold-harmless clause.  However, petitioners argue that section 2--8(a) bars Copley's lien because  the lien was not filed to recover either (1) a copayment or deductible for services covered by petitioners' policy or (2) fees for uncovered services.  Copley responds that it filed the lien to recover fees for allegedly noncovered medical services.  Copley essentially argues that, because Copley did not file a claim with Dreyer for reimbursement under the Hospital Agreement, petitioners' policy did not cover the medical services rendered.

In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute.  Where two legislative enactments allegedly conflict, this court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both enactments, if such a construction is reasonably possible.  The legislature is presumed to have intended that statutes relating to a single subject and controlled by a single policy will be consistent and harmonious, and any apparent conflicts between two such statutes will be reconciled if possible.  
Chavda v. Wolak
, 188 Ill. 2d 394, 402 (1999).

Copley contends that if we were to adopt petitioners' interpretation of section 1 of the Lien Act and section 2--8(a) of the HMO Act, the hold-harmless clause would invalidate all hospital liens.  We disagree.  The relevant sections of the Lien Act and the HMO Act can be construed to give effect to both enactments while avoiding any alleged inconsistency.

Our supreme court has held that a hospital lien may attach to money paid or due to the estate of a minor who settles a personal injury claim.  
In re Estate of Cooper
, 125 Ill. 2d 363, 369 (West 1988).  Although 
Cooper
 is instructive, the case does not control the outcome here because it did not address the hold-harmless clause of section 2--8(a) of the HMO Act.

We hold that section 1 of the Lien Act permitted Copley to file a lien against Blythe's estate.  See 770 ILCS 35/1 (West 1998); 
Cooper
, 125 Ill. 2d at 369.  However, under section 2--8(a) of the HMO Act, Copley had no right to "any recourse" against Blythe or her parents except for (1) applicable co-payments or deductibles for the medical services covered by petitioners' policy or (2) fees for services not covered by the policy.  We conclude that the hold harmless clause of section 2--8(a) invalidates a hospital lien unless the lien has been filed to recover payment for one of the exceptions contained in the clause.  Therefore, if Copley's lien was filed to recover for either (1) co-payments or deductibles for covered services or (2) fees for noncovered services, the lien is not void.

The record does not reveal whether the trial court decided the questions of whether petitioners' policy covered the medical services Copley rendered or whether petitioners paid the deductible as the policy required.  Therefore, we remand the cause and direct the trial court to make a finding on these issues and to apply section 2--8(a) of the HMO Act in deciding whether Copley's lien should be enforced.

Because our analysis of the HMO Act disposes of this case, we need not address petitioners' remaining arguments.

For these reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

HUTCHINSON, P.J., and BOWMAN, J., concur.