VALERIE ROGALLA, Indiv. and on Behalf of all Others Similarly Situated, Plaintiffs-Appellants, v. CHRISTIE CLINIC, P.C., *et al.*, Defendants-Appellees.

Fourth District    No. 4—02—0879

Argued April 23, 2003.—Opinion filed June 20, 2003.

Gary D. Forrester and Joseph W. Phebus (argued), both of Phebus & Koester, of Urbana, for appellant.

Richard T. West (argued), of Meyer Capel, P.C., of Champaign, for appellee Christie Clinic, P.C.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, Edward M. Wagner, of Heyl, Royster, Voelker & Allen, of Urbana, and Ralph A. Weber and

Amelia L. McCarthy, both of Reinhart Boerner Van Deuren, S.C., of Milwaukee, Wisconsin, for appellee Healthcare Recoveries, Inc.

William J. Brinkmann and Michael R. Cornyn, both of Thomas, Mamer & Haughey, of Champaign, for appellee Personal Care Health Management, Inc.

JUSTICE KNECHT delivered the opinion of the court:
Plaintiff, Valerie Rogalla, appeals the order dismissing with prejudice her second-amended class-action complaint (complaint) pursuant to sections 2—615 and 2—619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2—615, 2—619(a)(9) (West 2000). Plaintiff argues the circuit court erred in dismissing her complaint. We affirm.

## I. BACKGROUND
On April 5, 2002, plaintiff filed her complaint against defendants, Christie Clinic, P.C. (Christie Clinic), PersonalCare Health Management, Inc. (PersonalCare), and Trover Solutions, Inc., f/k/a Healthcare Recoveries, Inc. (Trover). In her complaint, plaintiff alleges the following.

PersonalCare is a corporation that operates a health maintenance organization (HMO), of which plaintiff was a member. PersonalCare and Christie Clinic had entered a medical services agreement (Agreement), under which Christie Clinic agreed to provide services to PersonalCare's HMO members. According to the Agreement, Christie Clinic would seek no payment from PersonalCare HMO members other than copayments and deductibles.

On December 5, 1994, plaintiff suffered severe injuries when her vehicle collided with a truck driven by Rodney Lippolt. Plaintiff received treatment for her injuries from Christie Clinic, and she paid all relevant copayments and deductibles.

Because the Agreement was a "capitation" contract, PersonalCare made no payments to Christie Clinic for the medical services provided to plaintiff following the accident other than the capitation fee. In addition to the services it provided plaintiff, Christie Clinic was obligated to pay, and did pay, third-party health-care providers for services rendered to plaintiff.

On February 23, 1995, plaintiff and her husband filed suit against Emery Air Freight Corporation and Lippolt in the circuit court of Champaign County (case No. 95—L—266). These parties later settled.

Later, PersonalCare asserted a lien in the amount of $149,865 against plaintiff's settlement recovery. PersonalCare, in its lien, stated the amount was for "medical expenses paid." On August 12, 1999, Trover represented by letter PersonalCare paid $132,659.42 on behalf of plaintiff and PersonalCare was owed that amount. According to

plaintiff, these amounts include charges from Christie Clinic and third-party medical providers that PersonalCare had no obligation to pay and either did not pay or paid at a discounted rate.

On September 21, 1999, plaintiff paid Trover $79,289.84 in reliance on the representations from Trover and PersonalCare. On July 22, 1999, Christie Clinic also claimed a lien against plaintiff's settlement. Christie Clinic asserted a lien of $28,750.50, which included charges accounted for in PersonalCare's lien.

Each defendant, alleging pleading deficiencies, moved to dismiss the second-amended complaint. At oral argument on the motions, the trial court granted the section 2—619 motions to dismiss. Later, by docket entry, the circuit court granted all motions to dismiss. Plaintiff appeals.

## II. ANALYSIS

■ Defendants separately moved to dismiss the counts against them. Defendants argued the counts were insufficient under sections 2—615 and 2—619 (735 ILCS 5/2—615, 2—619 (West 2000)). We review *de novo* appeals from section 2—615 and 2—619 dismissals and consider whether a dismissal was proper as a matter of law. See *Glisson v. City of Marion*, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1039 (1999); *Thomas v. Hileman*, 333 Ill. App. 3d 132, 136, 775 N.E.2d 231, 234 (2002).

We turn to the individual claims.

### A. Claims Against Christie Clinic

Plaintiff asserts two claims against Christie Clinic: a third-party beneficiary, breach-of-contract claim and a fraud claim. Christie Clinic moved to dismiss these claims under both section 2—615, for failure to state a claim, and section 2—619. We first consider Christie Clinic's section 2—615 motion to dismiss.

■ For a section 2—615 motion to dismiss, we accept the allegations in the complaint as true. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47, 566 N.E.2d 1365, 1366 (1991). The complaint includes not only the complaint itself, but also exhibits attached to it. *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 327 Ill. App. 3d 346, 355, 763 N.E.2d 428, 437 (2002). If allegations in the complaint conflict with the exhibit, the exhibit controls. *Mars*, 327 Ill. App. 3d at 355, 763 N.E.2d at 437. We examine the complaint to "determine whether the allegations ***[,] construed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 516, 778 N.E.2d 683, 688 (2002).

## 1. *Third-Party Beneficiary*

Count I asserts a third-party beneficiary, breach-of-contract claim against Christie Clinic. Plaintiff contends the Agreement between Christie Clinic and PersonalCare gave her third-party beneficiary rights, because it was created with the intent to confer a direct benefit upon plaintiff and other class members. Count I further alleges Christie Clinic breached the Agreement by violating the hold-harmless provision, which, she contends, prohibits Christie Clinic from seeking payments other than deductibles and copayments from HMO members, including plaintiff. Plaintiff alleges Christie Clinic breached the Agreement by (1) collecting or attempting to collect from plaintiff and other class members charges for services covered by the Agreement; and (2) improperly claiming liens against funds belonging to plaintiff and other class members. Plaintiff states "$28,750.50 [has] been tied up since August 6, 1999."

■ To recover as a third-party beneficiary, plaintiff must plead facts that would establish the contract was breached. See *Segall v. Berkson*, 139 Ill. App. 3d 325, 332, 487 N.E.2d 752, 757 (1985). Christie Clinic disputes plaintiff's argument and states the Physicians Lien Act (770 ILCS 80/1 (West 2000)) authorizes the lien and the lien did not breach the Agreement.

■ The Physicians Lien Act allows physicians to attach liens upon settlements and judgments for the reasonable charges for the treatment provided:

> "Every licensed physician practicing in this State who renders services by way of treatment to injured persons, except services rendered under the provisions of the Workers' Compensation Act or the Workers' Occupational Diseases Act, shall have a lien upon all claims and causes of action for the amount of his reasonable charges up to the date of payment of such damages." 770 ILCS 80/1 (West 2000).

Christie Clinic maintains the Agreement, when read as a whole, preserves its rights under the Physicians Lien Act. Christie Clinic points to article III, section W, the subrogation clause, and maintains this clause reserves its right "to seek to recover charges incurred as a result of providing Medical/Hospital Services which are the liability of a third party." Christie Clinic further states the hold-harmless provision is not violated by the lien because the lien is an action against the settlement fund, not an action against plaintiff.

Plaintiff maintains, however, the Physicians Lien Act does not apply. According to plaintiff, the hold-harmless clause renders plaintiff liable for no amount of the medical services provided by Christie Clinic other than copayments and deductibles, which plaintiff allegedly paid. The hold-harmless clause states the following:

"Christie will look solely to PersonalCare for compensation for Covered Services provided to Members, except for copayments authorized by PersonalCare under the applicable Member Certificate relating to Medical Services set forth in Attachment B. *** Neither Christie, Christie Members, nor any authorized Health Services Contractor of Christie shall *** assert any claim for compensation against Members in excess of the copayments authorized by PersonalCare's HMO."

Plaintiff continues there is no debt because it has been forgiven by contract. Because there is no debt, plaintiff asserts, there can be no lien. In support of her argument, plaintiff relies primarily on two cases from the Second District: *N.C. v. A.W.*, 305 Ill. App. 3d 773, 713 N.E.2d 775 (1999), and *Richmond v. Caban*, 324 Ill. App. 3d 48, 754 N.E.2d 871 (2001).

Both *N.C.* and *Richmond* considered whether physicians' liens were appropriate when an insured was injured by a third party. In *N.C.*, the plaintiff was injured in an automobile accident by the defendant and treated by Northern Illinois Medical Center (NIMC). Plaintiff's hospital bill totaled over $22,000, but plaintiff's insurer paid NIMC $4,200, "in full payment *** pursuant to NIMC's contract with [the insurer]." The plaintiff sued the defendant for damages. *N.C.*, 305 Ill. App. 3d at 774, 713 N.E.2d at 775-76. NIMC filed a physician's lien for the difference between the bill and the amount paid.

The Second District began with NIMC's contract with the insurer. According to that contract, the insurer would encourage its members to obtain services from the hospital, and the hospital would bill the insurer at reduced rates. This contract also released the insured from liability for uncovered expenses, except for deductibles, coinsurance, copayments, and noncovered services, after the insurer paid the hospital at the agreed rate. The Second District held "the contract between NIMC and [the insurer] extinguished all debts once plaintiff's insurer paid NIMC at the agreed rate. *** [T]he debt was extinguished pursuant to the contract [and] NIMC no longer had any putative lien rights." *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776.

In *Richmond*, the Second District considered the relationship between the Hospital Lien Act (770 ILCS 35/1 (West 1998)) and the hold-harmless provision of the Health Maintenance Organization Act (HMO Act) (215 ILCS 125/2—8(a) (West 1998)). *Richmond*, 324 Ill. App. 3d at 53-54, 754 N.E.2d at 875-76. Blythe, the plaintiff, was injured in an automobile accident and incurred $24,238 in medical expenses at Copley Memorial Hospital (Hospital). "At the time of the accident, Dreyer [(the administrator of the HMO policy)] directed ***

policyholders to use [the hospital's] medical services, and, in exchange, [the hospital] charged Dreyer reduced rates for the services." *Richmond*, 324 Ill. App. 3d at 50, 754 N.E.2d at 873. Knowing it would receive less than one-third of the value of its services if it submitted a claim to Dreyer, the hospital instead "attempted to maximize its recovery by filing a lien against Blythe's settlement proceeds." *Richmond*, 324 Ill. App. 3d at 52, 754 N.E.2d at 874. The court held the Physicians Lien Act permitted the hospital to file a lien against Blythe's estate. Because of the hold-harmless provision of the HMO Act, however, the court held the hospital "had no right to 'any recourse' against Blythe or her parents except for (1) applicable co[ ]payments or deductibles for the medical services covered by petitioners' policy or (2) fees for services not covered by the policy." *Richmond*, 324 Ill. App. 3d at 54, 754 N.E.2d at 876.

Plaintiff concludes the Physicians Lien Act does not give rise to a claim but allows liens when physicians seek to recover unpaid obligations. Because there were no unpaid obligations, the act of attaching the lien breached the Agreement.

Christie Clinic asserts, however, neither *N.C.* nor *Richmond* involved a capitation contract between the medical provider and the insurer, like the Agreement here. Under a capitation contract, according to the complaint, PersonalCare pays Christie Clinic a monthly fee and Christie Clinic provides services to PersonalCare HMO members. Christie Clinic asserts although it agreed not to seek payment from plaintiff, Christie Clinic preserved its rights to seek medical charges resulting from the actions of third parties. Christie Clinic points to the subrogation clause of the Agreement and to our decision in *First Midwest Trust Co. v. Rogers*, 296 Ill. App. 3d 416, 701 N.E.2d 1107 (1998), *overruled on other grounds in Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 767 N.E.2d 314 (2002).

Article III, section W, of the Agreement, the subrogation clause, authorizes Christie Clinic to subrogate itself into the shoes of the plaintiff: "Christie and PersonalCare shall have the right to seek to recover charges incurred as a result of providing Medical/Hospital Services which are the liability of a third party."

In *Rogers*, the plaintiff, Jerry Mallady, sued the defendants, Paul Ty Rogers and the Town of Arcola, for damages resulting from a collision between a snowplow driven by Rogers and Jerry's automobile. See *Rogers*, 296 Ill. App. 3d at 419, 701 N.E.2d at 1109. On appeal, the defendants argued, in part, the damages awarded to the plaintiff should be reduced. The defendants maintained they should not have to pay the medical expenses because plaintiff was not liable for $377,582.92 in medical expenses as he was covered by HMO insur-

ance. The plaintiff argued, however, the collateral-source rule applied. We agreed. See *Rogers*, 296 Ill. App. 3d at 431-32, 701 N.E.2d at 1117. We found "a wrongdoer should not benefit from expenditures made by the injured party, or take advantage of contracts or other relations which exist between the injured party and third persons." *Rogers*, 296 Ill. App. 3d at 432, 701 N.E.2d at 1118. The debt of the third party continued.

The *Rogers* defendants alternatively argued to apply section 2—1205.1 of the Code of Civil Procedure (735 ILCS 5/2—1205.1 (West 1992)) to reduce the damages. According to section 2—1205.1, "a judgment will be reduced by any amount in excess of $25,000 of the benefits provided for medical or hospital charges, but such reduction does not apply to the extent that there is a right of recoupment through subrogation, lien, or otherwise." *Rogers*, 296 Ill. App. 3d at 433, 701 N.E.2d at 1118. We agreed with the plaintiff's argument that because the costs were subject to recoupment under the PersonalCare HMO agreement, the reduction under section 2—1205.1 did not apply. *Rogers*, 296 Ill. App. 3d at 433, 701 N.E.2d at 1118.

The *Rogers* HMO agreement provided the following:

" 'IX. RIGHT OF REIMBURSEMENT. For benefits provided by PersonalCare under this certificate, PersonalCare shall be entitled to reimbursement and shall succeed to any right of recovery \*\*\* against a third party responsible for the member incurring benefits.

\* \* \*

The member, or any acting on his behalf, agrees:

\* \* \*

D. That PersonalCare:

1. Shall have a lien on all funds recovered in connection to the loss *to the extent of its payment \*\*\**.' " (Emphasis in original.) *Rogers*, 296 Ill. App. 3d at 433-34, 701 N.E.2d at 1118.

We rejected the *Rogers* defendants' argument that the "payment" was limited to the capitation payment because "PersonalCare would have made this payment even if Jerry had not received any treatment." Instead, we recognized the medical services were obviously "not cost-free." *Rogers*, 296 Ill. App. 3d at 434, 701 N.E.2d at 1119. We then determined the amount Christie Clinic allocated toward plaintiff's treatment was the "reasonable and customary medical expenses 'paid' by PersonalCare to the hospitals for [plaintiff's] treatment," as determined by an allocation of the capitation payment to plaintiff's treatment. *Rogers*, 296 Ill. App. 3d at 434, 701 N.E.2d at 1119. We concluded "PersonalCare's payments to Covenant and Christie constitute[d] 'payments' subject to recoupment." *Rogers*, 296 Ill. App. 3d at 434, 701 N.E.2d at 1119.

Neither *N.C.*, *Richmond*, nor *Rogers* is directly on point to the facts of this case, but the analysis in *Rogers* applies here. *Rogers* clearly establishes the debt or obligation of the tortfeasor is not excused by a capitation payment by the HMO insurer to the medical provider. *Rogers* also establishes that the amount of the debt of the tortfeasor is measured not by the HMO member's portion of the monthly or yearly capitation payment but by "the amount of reasonable and customary medical expenses 'paid' " from the overall capitation payment. *Rogers*, 296 Ill. App. 3d at 434, 701 N.E.2d at 1119.

Plaintiff correctly asserts *Rogers* concerns an HMO agreement and not a medical services agreement, like the Agreement here. This distinction, however, is not important. What we learn from *Rogers*, and what is relevant here, are two things: (1) the obligation by the third-party tortfeasor is not forgiven or lessened by HMO coverage; and (2) the provider may recoup payments incurred as a result of the third party. This is the tortfeasor's debt to plaintiff and the provider, it is not the plaintiff's debt.

The Agreement's hold-harmless provision does not limit Christie Clinic's ability to seek a lien only to the amounts Christie Clinic could obtain from the HMO member. In the Agreement, Christie Clinic reserved its rights under the Physicians Lien Act to subrogate the claims of plaintiff. Plaintiff argues the subrogation right is an obligation improperly imposed on plaintiff, a third-party beneficiary. The subrogation clause, however, does not give Christie Clinic a right of subrogation it did not have before. Instead, the clause reserves Christie Clinic's statutory right to seek relief from third-party tortfeasors.

We agree with the circuit court's analysis of *N.C.* and hold to adopt *N.C.* would be inconsistent with the principles set forth in *Rogers*:

"I think that the position taken in N.C., quite frankly *** is simply inconsistent with our entire theory of tort recovery in personal injury cases and the collateral[-]source rule. It does seem to me that there is an irreconcilable, logical tension here between the situation in which a plaintiff is quite properly allowed to obtain a statement of services from a medical provider and utilize that in negotiating a settlement, or for that matter, in proving the damages to a jury; that the jury is allowed to consider that sum which reflects the fair, reasonable, and customary charges in the community for those services in assessing damages and returning a verdict, but then we turn around and we tell the people that provided those services, you cannot recover against that. Then the entire theory and rationale for damages seems to suffer a bit of a setback[.]"

\* \* \*

\*\*\* [U]nder the N.C. case then, the service provider can't possibly recover because they have forgiven [the debt]; they've done the right thing and forgiven the debt, therefore there's no debt for the physician's lien to attach to, and the tortfeasor ends up with a windfall."

This approach makes sense. The tortfeasor causes an injury that must be treated. Christie Clinic provides treatment to plaintiff—treatment it would not have had to provide absent the actions of the tortfeasor. Under plaintiff's theory, Christie Clinic then loses resources because of the fault of the tortfeasor but then cannot recover those resources. If plaintiff recovers the reasonable value of these services, then Christie Clinic as the provider of those services should be able to recover for the amounts it was wronged. Otherwise, plaintiff receives a windfall at Christie Clinic's expense, something the Physicians Lien Act and general tort principles would not allow.

■ We also note the Physicians Lien Act is not an action against plaintiff and does not violate the hold-harmless provision of the Agreement. Although no published decision has considered whether a physician lien is an action against a fund or a party, the Illinois Supreme Court has considered a similar lien, an attorney's lien, and found the lien was an action against the settlement fund and not one against the original plaintiff.

In *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 90, 93, 759 N.E.2d 906, 908-09, 910 (2001), Illinois Special Counsel, who was appointed to litigate the State's tobacco claims, attached a lien under section 1 of the Attorneys Lien Act (770 ILCS 5/1 (West 1998)) against the tobacco settlement fund. The circuit court of Cook County ordered the State and tobacco defendants to deposit 10% of the settlement payments into an account pending a decision on the lien petition. *Philip Morris*, 198 Ill. 2d at 93, 759 N.E.2d at 910. The State opposed the petition, arguing the circuit court lacked subject-matter jurisdiction over the lien proceeding because the lien was an action against the State. The circuit court certified the following question for appeal:

" 'Does the [c]ircuit [c]ourt have jurisdiction to adjudicate a petition under the Attorney's Lien Act brought by counsel for the State of Illinois, against the proceeds of a settlement, where the State of Illinois was the plaintiff in the underlying action and where the settlement funds have never come into the possession or control of the State?' " *Philip Morris*, 198 Ill. 2d at 93, 759 N.E.2d at 910.

The *Philip Morris* court rejected the State's argument that the attorney's lien was a breach of contract action against the State. The court held "[t]he attorney's only interest is in the proceeds of the litigation or its settlement." *Philip Morris*, 198 Ill. 2d at 97, 759

N.E.2d at 913. The court held, "In sum, [the] lien proceeding is not a claim against the State of Illinois. Rather, it is a statutory claim against a fund of monies to be paid by private defendants." *Philip Morris*, 198 Ill. 2d at 102, 759 N.E.2d at 915.

■ The analysis equally applies here. As alleged, Christie Clinic's only interest is in the proceeds of the settlement, and Christie Clinic's lien is "a statutory claim against a fund of monies to be paid" by third-party tortfeasors, not a claim against plaintiff. Therefore, Christie Clinic's alleged actions do not violate Christie Clinic's agreement not to seek funds from HMO members in the hold-harmless provision of the Agreement.

The allegations as pleaded thus do not establish a breach of the Agreement. Plaintiff has therefore failed to plead an essential element of her cause of action. We therefore affirm the circuit court's grant of the section 2—615 motion to dismiss count I of plaintiff's second-amended complaint.

Having affirmed the dismissal of count I on section 2—615 grounds, we need not consider Christie Clinic's section 2—619(a)(9) motion in regards to count I.

### 2. *Fraud*

In count II, plaintiff asserts a claim of fraud against Christie Clinic. Plaintiff contends Christie Clinic collected and continued to collect from PersonalCare HMO members with the intent plaintiff and the class rely on one or more of the following acts or omissions: (1) Christie Clinic failed to disclose to the plaintiff or class members certain material terms of the health-care contract with PersonalCare, including the hold-harmless clause and the fact the contract is a capitation contract; and (2) Christie Clinic, knowing it to be false, stated it paid third parties and was entitled to reimbursement. Plaintiff and the class relied upon these representations or omissions in paying Christie Clinic amounts they would not have paid had they known of the nondisclosed hold-harmless clause and capitation provisions of the health-care contract. Plaintiff alleges she and the class were injured by having made payments to Christie Clinic or by Christie Clinic's tying up use of monies by liens.

Christie Clinic moved to dismiss this claim under section 2—615 and argued plaintiff failed to state her fraud claim. We agree.

■ It is well settled fraud claims must be pleaded with particularity. See *Small v. Sussman*, 306 Ill. App. 3d 639, 646, 713 N.E.2d 1216, 1221 (1999). Here, no particular factual allegations link the alleged misrepresentations or omissions to the alleged injury. The only particular alleged harm inflicted by Christie Clinic is the "tying up" of

the amounts in the physician lien. However, nothing plaintiff did in "reliance" on the misrepresentations or omissions resulted in the lien. Plaintiff alleged "[she] and the class members relied upon said representations or omissions in making payment to Defendant Christie," but this allegation is not particular enough. There are no specific factual allegations plaintiff herself made any payments to Christie Clinic as a result of the alleged misrepresentations or omissions. Indeed, the allegation itself is contradicted by the more specific damages allegation, which asserts plaintiff's only damages were loss of the use of the $28,750.50 subject to the lien. For this more particular damages allegation, we cannot see how any of plaintiff's alleged actions resulted in her damages.

■ In her appellant's brief, plaintiff now asserts her complaint alleges fraud by Christie "in persuading plaintiff to part with over $79,000." Plaintiff has not alleged she relied on Christie Clinic's representations or omissions in paying Trover or PersonalCare $79,000. Nor has plaintiff alleged Christie Clinic received payments and intended to deceive plaintiff into paying Trover or PersonalCare $79,000. In fact, in paragraph 23 of the complaint, plaintiff asserts she paid Trover over $79,000 in reliance on representations from Trover and PersonalCare. We note paragraph 23 says "Christie," but this reference appears to be a typographical error. In paragraph 23, plaintiff references exhibit B to the complaint. Exhibit B is the lien asserted by PersonalCare. Nowhere in exhibit B does Christie Clinic assert anything. Thus, even if the reference to Christie Clinic was not a typographical error, because there is a conflict between the allegation and the exhibit, the exhibit controls. *Mars*, 327 Ill. App. 3d at 355, 763 N.E.2d at 437. Plaintiff has not pleaded she relied on any statements or omissions by Christie Clinic in parting with her $79,000.

Plaintiff has failed to plead sufficiently a fraud claim against Christie Clinic. We affirm the section 2—615 dismissal of count II, and we need not address Christie Clinic's section 2—619 motion regarding count II.

## B. Claims Against PersonalCare

Plaintiff claims PersonalCare wrongfully secured a lien on her settlement and wrongfully sought and procured a settlement of its claim from her. Plaintiff asserts three claims against PersonalCare: third-party beneficiary breach of contract, fraud, and unjust enrichment. In count III of the complaint, plaintiff contends PersonalCare breached the Agreement with Christie Clinic by (1) asserting claims greater than amounts actually paid to health-care providers; and (2) improperly claiming liens. In count IV, plaintiff asserts PersonalCare

committed fraud, when it, with the intent to deceive, committed the following: (1) failed to disclose material terms of the Agreement; (2) failed to disclose it is not liable for and has not paid the charges in question; and (3) falsely claimed it had paid charges it had not paid. Count V asserts an unjust enrichment claim against PersonalCare, claiming PersonalCare was unjustly enriched by receiving payments in excess of amounts actually paid.

PersonalCare moved to dismiss the complaint under both sections 2—619(a)(9) and 2—615. In its section 2—619(a)(9) motion, Personal-Care asserts plaintiff's claims are barred by other affirmative matters. First, PersonalCare contends its relationship with plaintiff is governed by a contract, the HMO Group Medical and Hospital Service Certificate (Certificate), which, it asserts, authorizes it to collect the reasonable value of the medical treatment services. Second, PersonalCare asserts plaintiff's claim is barred by the doctrine of accord and satisfaction because plaintiff has settled the dispute. And last, PersonalCare maintains the arbitration clause of the Certificate requires plaintiff's claims be arbitrated.

■ A complaint may be dismissed under section 2—619 "when the asserted claim is barred by other affirmative matter that defeats the claim or voids its legal effect." *Turner v. Fletcher*, 302 Ill. App. 3d 1051, 1055, 706 N.E.2d 514, 517 (1999). The term " 'affirmative matter' refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Glisson*, 188 Ill. 2d at 220, 720 N.E.2d at 1039. The term "encompasses any defense *other than* a negation of the essential allegations of the plaintiff's cause of action." (Emphasis in original.) *Palumbo Bros., Inc. v. Wagner*, 293 Ill. App. 3d 756, 760, 688 N.E.2d 837, 840 (1997).

We begin by examining PersonalCare's argument the Certificate authorizes it to recoup more than plaintiff's share of the capitation payments. PersonalCare maintains the Certificate authorizes it to secure a lien for the "reasonable cash value of the benefits provided in the form of services." PersonalCare points to article IX of the Certificate, which states "[t]hat PersonalCare *** [s]hall have a lien on all funds recovered in connection with the loss to the extent of its payments" and allows, when funds are received in settlement, Person-alCare to be reimbursed by the lesser of "[t]he amount paid by Per-sonalCare for the loss" or "[f]ifty percent (50%) of the settlement." PersonalCare next asserts the Certificate defines "payment made" as "reasonable cash value of the benefits provided in the form of services." PersonalCare cites *Hartford Accident & Indemnity Co. v.*

*Case Foundation Co.*, 10 Ill. App. 3d 115, 294 N.E.2d 7 (1973), and maintains because the Certificate defines "payment made" in one part, the same definition applies throughout.

Plaintiff contends the Certificate does not apply and disputes PersonalCare's proposed interpretation of "payments." First, plaintiff argues its claims are based not on the Certificate, but on the Agreement. Second, plaintiff states the Certificate's definition of "payment made" applies only to the section it is within.

■ Plaintiff's first argument misses the mark. As the circuit court held, plaintiff's relationship with PersonalCare is governed by the Certificate. Plaintiff could not be a third-party beneficiary or have any relationship with PersonalCare or Christie Clinic absent the Certificate. Thus, its provisions apply.

We do, however, agree the definition for "payments made" does not apply throughout. We will not apply the same definition to the entire contract when it is clear the definition does not apply throughout. Here, the terms "payment made" and "amount of the payments made" are different from the term "payments," which occurs throughout the article IX right-of-reimbursement paragraphs. Indeed, accepting PersonalCare's definition would mean the same definition would apply to the use of the word "payments" in article X, which discusses "payments" received by HMO members.

We have, however, interpreted the term "payment" from article IX in *Rogers*. There, we held the term "payment" was not limited to the plaintiff's HMO member's share of the capitation payment, but was the amount of the total capitation payment allocated to the treatment of that particular HMO member. See *Rogers*, 296 Ill. App. 3d at 434, 701 N.E.2d at 1119. Thus, it cannot be fraud, breach of contract, or unjust enrichment for PersonalCare to accept funds greater than the amount actually paid for plaintiff's share of the capitation payment. We therefore affirm the circuit court's section 2—619(a)(9) dismissal of counts III, IV, and V of the complaint.

Neither this court nor the circuit court was asked to determine how much Christie Clinic or PersonalCare would be entitled to from plaintiff's settlement fund. We do not make any decision on that issue other than finding plaintiff cannot prove Christie Clinic and PersonalCare breached the Agreement, committed fraud, or were unjustly enriched by attaching their liens.

By holding plaintiff's claims are barred by an affirmative matter, we need not address PersonalCare's remaining section 2—619(a)(9) arguments or its section 2—615 motion.

## C. Claim Against Trover

Count VI asserts a fraud claim against Trover. It alleges Trover

has collected and is attempting to collect monies from PersonalCare HMO members for services provided by third-party health-care providers, even though PersonalCare is not obligated to pay and has not paid for said services. Trover, knowing the falsity of the assertion or with reckless disregard as to whether or not the assertion was true, fraudulently asserted to plaintiff and the class that PersonalCare had made payments to health-care providers when those payments had not in fact been made.

Count VI further alleged Trover made these representations with the intent to deceive plaintiff and the class into believing PersonalCare had paid the charges. In reliance on these representations, count VI alleges, plaintiff and the class paid Trover amounts neither Trover nor PersonalCare had any right to receive.

Trover moved to dismiss count VI under section 2—619.1 (735 ILCS 5/2—619.1 (West 2000)). Under section 2—619(a)(9), Trover establishes by affidavit it was an agent for PersonalCare. Trover argues it was on PersonalCare's behalf it secured the lien and sought a settlement from plaintiff. Trover maintains because PersonalCare had a valid claim for the payments as allocated to plaintiff's treatment, the fraud claim against it must be dismissed.

■■ Plaintiff contends Trover's motions were procedurally improper. Plaintiff maintains Trover's section 2—615 motion improperly incorporated its section 2—619 motion and should be dismissed. Plaintiff also argues the section 2—615 motion improperly combined the motion and the memorandum. We, however, need not decide whether the section 2—615 motion should be dismissed because we find the circuit court properly dismissed count VI under section 2—619(a)(9).

In its section 2—619(a)(9) motion, Trover established by affidavit it acted as the agent of PersonalCare in settling with plaintiff's claim. Because Trover was acting as PersonalCare's agent and because we have already held PersonalCare could assert a lien for more than the plaintiff's share of the capitation payment, the circuit court properly dismissed count VI.

## III. CONCLUSION

We affirm the judgment of the circuit court of Champaign County in dismissing counts I and II pursuant to section 2—615 and counts III, IV, V, and VI pursuant to section 2—619(a)(9).

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.