817 N.E.2d 592 (2004)
352 Ill. App.3d 1174
288 Ill.Dec. 234
Servando LOPEZ, Plaintiff and Petitioner-Appellee and Cross-Appellant,
v.
Maureen Jane MORLEY, Defendant (Provena Mercy Center, Respondent-Appellant and Cross-Appellee).
No. 2-03-1106.
Appellate Court of Illinois, Second District.
October 22, 2004.
*593 John J. Rademacher Sr., Knepper & Kibby, P.C., Chicago, for Provena Mercy Center.
Joseph C. Loran, Matthew J. Herman, Kinnally, Krentz, Loran, Hodge & Herman, P.C., Aurora, for Servando Lopez.
*594 George M. Bebble, Momkus, McCluskey, McAndrew & Monroe, LLC, Downers Grove, for Maureen Jane Morley.
Timothy J. Reuland, Lindner, Speers & Reuland, P.C., Aurora, for Amicus Curiae Illinois Trial Lawyers Association.
Justice KAPALA delivered the opinion of the court:
Respondent-appellant and cross-appellee, Provena Mercy Center (Provena), appeals from the judgment of the circuit court of Kane County granting the motion by plaintiff and petitioner-appellee and cross-appellant, Servando Lopez, to extinguish Provena's lien under the Hospital Lien Act (Act) (770 ILCS 35/1 (West 2002)). Plaintiff cross-appeals from the trial court's denial of his motion for Supreme Court Rule 137 (155 Ill.2d R. 137) sanctions. We affirm.

I. BACKGROUND
Plaintiff received medical treatment from Provena for injuries suffered on December 23, 2001, during an automobile accident with defendant, Maureen Jane Morley. Provena charged plaintiff $33,753.27 for this treatment. Plaintiff does not dispute that the charges were reasonable and customary. Provena took a hospital lien for the full amount of the charges. 770 ILCS 35/1 (West 2002).
Plaintiff had health insurance coverage that was administered by United Health Care (United). United had a contract with Provena, in which Provena agreed to accept less than the reasonable and customary value of services rendered to certain insured persons, including plaintiff. Under the terms of their contract, the amount paid by United would be considered full payment for the services rendered to the insured, and Provena would not seek recovery for any additional amounts from the insured. United paid Provena $4,900 as full payment for the services rendered to plaintiff.
Plaintiff subsequently filed suit against defendant for his injuries. The parties settled the matter for $120,000. During the settlement negotiations plaintiff represented that his medical bills from Provena amounted to $33,753.27. Also, during the pendency of the suit, plaintiff contacted Provena about the balance of his bill. Provena informed plaintiff's attorney on at least two occasions that plaintiff had a zero balance with Provena. Plaintiff then filed a petition to adjudicate Provena's hospital lien. Plaintiff's position was that Provena did not have a lien because it had accepted $4,900 as full payment from United and, therefore, Provena was not owed any further money. Plaintiff cited our decision in N.C. v. A.W., 305 Ill.App.3d 773, 239 Ill.Dec. 244, 713 N.E.2d 775 (1999), that he claimed was conclusive. Provena responded that although it could not recover any further amounts from plaintiff directly, it still held a valid lien for the difference between what was charged and what was paid by United. Provena admitted that the authority cited by plaintiff supported plaintiff's contentions but Provena also argued that we should overrule our previous ruling and allow Provena to recover on the lien. Plaintiff also moved for Rule 137 sanctions against Provena for contending that it had a right to recover on the lien despite controlling precedent. The trial court extinguished Provena's lien and denied plaintiff's motion for sanctions.
Provena filed a timely appeal and plaintiff filed a timely cross-appeal. On appeal, the Illinois Trial Lawyers Association (ITLA) filed a motion for leave to file an amicus curiae brief in support of plaintiff, which we granted.

II. DISCUSSION
Provena contends that our holding in N.C. violates public policy and the language *595 of section 1 of the Act (770 ILCS 35/1 (West 2002)) and, therefore, should be overturned. Provena contends that we should follow the reasoning enunciated by the Fourth District in Rogalla v. Christie Clinic, P.C., 341 Ill.App.3d 410, 276 Ill.Dec. 489, 794 N.E.2d 384 (2003). Plaintiff and the ITLA in its amicus curiae brief argue that our decision in N.C. was sound and should be upheld.
In N.C. the plaintiff was injured as result of an automobile accident with the defendant. The plaintiff was treated at Northern Illinois Medical Center (NIMC). NIMC's bill totaled $22,551. The plaintiff was insured by Great West Life & Annuity Insurance Co. (Great West) through a preferred provider organization (PPO) plan. This PPO plan was affiliated with One Health Plan of Illinois, Inc. (One Health). One Health had contracted with NIMC to provide bulk business to NIMC in return for NIMC receiving a reduced rate as full payment for its services. This contractual savings was passed on to Great West through its contract with One Health. One Health's contract with NIMC also provided that, except for deductibles, coinsurance, copayments, and charges for nonapproved and noncovered services, a One Health member was not liable for any amount over what was paid by the insurer. As a result, Great West paid NIMC only $4,200 as full payment for the plaintiff's medical bills. NIMC acknowledged that it had been paid in full by Great West. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775.
The plaintiff filed a personal injury action against the defendant. During the pendency of the suit, NIMC took a lien pursuant to the Act against the proceeds of the lawsuit. The plaintiff filed a petition to adjudicate NIMC's lien. Subsequently, the defendant's liability carrier offered the defendant's policy limit of $100,000 as full and final payment for the plaintiff's claim against the defendant. The plaintiff accepted the offer. The trial court then determined that NIMC's lien should be extinguished because NIMC's contract with One Health precluded NIMC from collecting under its lien. N.C., 305 Ill.App.3d at 774-75, 239 Ill.Dec. 244, 713 N.E.2d 775.
On appeal, we affirmed the trial court's decision to extinguish NIMC's lien. N.C., 305 Ill.App.3d at 775-77, 239 Ill.Dec. 244, 713 N.E.2d 775. We reasoned that the lien existed to satisfy the plaintiff's debt to the hospital. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775. However, we further found that NIMC's contract with One Health extinguished all debts once NIMC was paid the agreed-upon rate. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775. Therefore, we held that the lien must also be extinguished because there was no debt to satisfy. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775.
NIMC contended that it could enforce the lien against the defendant's property as the party responsible for the plaintiff's injuries even if it could not recover from the plaintiff directly. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775. We rejected this argument for four reasons. N.C., 305 Ill.App.3d at 775-76, 239 Ill.Dec. 244, 713 N.E.2d 775. First, we held that the plaintiff incurred the debt, not the defendant. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775. Second, we found that the debt had been paid. N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775. Third, we found that even if a debt existed, the lien would be on the plaintiff's assets, not the defendant's. N.C., 305 Ill.App.3d at 775-76, 239 Ill.Dec. 244, 713 N.E.2d 775. Finally, we found that the fact that the plaintiff received a settlement from the defendant did not entitle *596 NIMC to receive more than the amount it contracted for. N.C., 305 Ill.App.3d at 776, 239 Ill.Dec. 244, 713 N.E.2d 775.
Next, NIMC contended, citing Gordon v. Forsyth County Hospital Authority, Inc., 409 F.Supp. 708 (M.D.N.C.1975), that the plaintiff would be unjustly enriched by receiving reimbursement for medical bills over the amount he actually paid. N.C., 305 Ill.App.3d at 776, 239 Ill.Dec. 244, 713 N.E.2d 775. However, we found Gordon distinguishable. N.C., 305 Ill.App.3d at 776-77, 239 Ill.Dec. 244, 713 N.E.2d 775. The plaintiff's treatment in Gordon was given free of charge. N.C., 305 Ill.App.3d at 776, 239 Ill.Dec. 244, 713 N.E.2d 775. The plaintiff then recovered damages for medical services in his tort suit. N.C., 305 Ill.App.3d at 776, 239 Ill.Dec. 244, 713 N.E.2d 775. The hospital had a lien against the lawsuit proceeds and the court found that the hospital was due payment under the lien because it would be unconscionable to permit the taxpayers to bear the expense of the plaintiff's medical services while allowing the plaintiff to recover for those services. N.C., 305 Ill.App.3d at 776, 239 Ill.Dec. 244, 713 N.E.2d 775. However, since NIMC had received compensation for its services we found that Gordon did not apply. N.C., 305 Ill.App.3d at 776-77, 239 Ill.Dec. 244, 713 N.E.2d 775.
Finally, we noted that it was not inequitable for NIMC to receive only 18.6 cents on the dollar. N.C., 305 Ill.App.3d at 777, 239 Ill.Dec. 244, 713 N.E.2d 775. NIMC voluntarily contracted for such a rate in exchange for an increase in patients. N.C., 305 Ill.App.3d at 777, 239 Ill.Dec. 244, 713 N.E.2d 775. We found that NIMC was simply experiencing buyer's remorse. N.C., 305 Ill.App.3d at 777, 239 Ill.Dec. 244, 713 N.E.2d 775.
In Rogalla v. Christie Clinic, P.C., 341 Ill.App.3d 410, 276 Ill.Dec. 489, 794 N.E.2d 384 (2003), the Fourth District disagreed with our reasoning in N.C. The plaintiff in Rogalla received medical services from Christie Clinic, P.C. (Christie), in connection with an automobile accident. Christie had entered into a capitation agreement with the plaintiff's health maintenance organization (HMO), Personal Care. The capitation agreement provided that Christie would receive a certain amount each month from Personal Care and that this amount would be considered full payment for all services provided to Personal Care members. Christie also agreed that it would not seek additional payment from Personal Care members except for copayments and deductibles. The agreement further contained a subrogation clause that provided that Christie would have the right "`to seek to recover charges incurred as a result of providing Medical/Hospital Services which are the liability of a third party.'" Rogalla, 341 Ill.App.3d at 414, 276 Ill.Dec. 489, 794 N.E.2d 384. The plaintiff filed suit in relation to the automobile accident and eventually settled. Christie did not seek any payments directly from the plaintiff; however, it did assert a lien against the settlement proceeds. Rogalla, 341 Ill.App.3d at 412-14, 276 Ill.Dec. 489, 794 N.E.2d 384. The lien was asserted pursuant to the Physicians Lien Act (770 ILCS 80/1 (West 2000)), which stated:
"Every licensed physician practicing in this State who renders services by way of treatment to injured persons, except services rendered under the provisions of the Workers' Compensation Act or the Workers' Occupational Diseases Act, shall have a lien upon all claims and causes of action for the amount of his reasonable charges up to the date of payment of such damages." 770 ILCS 80/1 (West 2000).
*597 Rogalla, 341 Ill.App.3d at 414, 276 Ill.Dec. 489, 794 N.E.2d 384.
The court in Rogalla then examined case law in regard to whether Christie's lien was valid, including our decision in N.C. Rogalla, 341 Ill.App.3d at 415-20, 276 Ill.Dec. 489, 794 N.E.2d 384. The court held that the obligation to pay the medical expenses incurred because of the actions of a third party tortfeasor was that of the third party tortfeasor, not the injured party. Rogalla, 341 Ill.App.3d at 418, 276 Ill.Dec. 489, 794 N.E.2d 384. The court next pointed out that the subrogation clause in Christie's contract did not give Christie any new rights but "reserves [Christie's] statutory right to seek relief from third-party tortfeasors." Rogalla, 341 Ill.App.3d at 418, 276 Ill.Dec. 489, 794 N.E.2d 384. With regard to N.C., the court adopted the reasoning of the trial court, which stated:
"`I think that the position taken in N.C., quite frankly * * * is simply inconsistent with our entire theory of tort recovery in personal injury cases and the collateral[-]source rule. It does seem to me that there is an irreconcilable, logical tension here between the situation in which a plaintiff is quite properly allowed to obtain a statement of services from a medical provider and utilize that in negotiating a settlement, or for that matter, in proving the damages to a jury; that the jury is allowed to consider that sum which reflects the fair, reasonable, and customary charges in the community for those services in assessing damages and returning a verdict, but then we turn around and we tell the people that provided those services, you cannot recover against that. Then the entire theory and rationale for damages seems to suffer a bit of a setback[.]
* * *
* * * [U]nder the N.C. case then, the service provider can't possibly recover because they have forgiven [the debt]; they've done the right thing and forgiven the debt, therefore there's no debt for the physician's lien to attach to, and the tortfeasor[1] ends up with a windfall.'" Rogalla, 341 Ill.App.3d at 418-19, 276 Ill.Dec. 489, 794 N.E.2d 384.
The court next discussed its holding in First Midwest Trust Co. v. Rogers, 296 Ill.App.3d 416, 233 Ill.Dec. 833, 701 N.E.2d 1107 (1998), overruled on other grounds in Donaldson v. Central Illinois Public Service Co., 199 Ill.2d 63, 262 Ill.Dec. 854, 767 N.E.2d 314 (2002). In Rogers the court was faced with, inter alia, the issue of whether an injured party can recover for medical payments that were covered by an HMO and, therefore, were not paid by the injured party. Rogers, 296 Ill.App.3d at 431-34, 233 Ill.Dec. 833, 701 N.E.2d 1107. The court found that the collateral-source rule would allow an injured party to recover reasonable medical expenses even if the injured party was covered by an HMO because, from the injured party's perspective, the HMO was equivalent to an insurance policy. Rogers, 296 Ill.App.3d at 432-33, 233 Ill.Dec. 833, 701 N.E.2d 1107. The collateral-source rule states that benefits received by an injured party from a source wholly independent of, and collateral to, a tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. Rogers, 296 Ill.App.3d at 433, 233 Ill.Dec. 833, 701 N.E.2d 1107. Therefore, even if the HMO paid rates well below the full reasonable *598 charges, the injured party could recover the full amount. Rogers, 296 Ill.App.3d at 431-34, 233 Ill.Dec. 833, 701 N.E.2d 1107. This ruling comported with the underpinnings of the collateral-source rule, namely, that a "wrongdoer should not benefit from expenditures made by the injured party, or take advantage of contracts or other relations which exist between the injured party and third persons. [Citation.]" Rogers, 296 Ill.App.3d at 432, 233 Ill.Dec. 833, 701 N.E.2d 1107. Further, "[a]lthough injured parties may receive a windfall from the collateral-source rule, it is usually considered more just for an injured party to receive the windfall than for a wrongdoer to be relieved of full responsibility for his wrongdoing. [Citation.]" Rogers, 296 Ill.App.3d at 432-33, 233 Ill.Dec. 833, 701 N.E.2d 1107.
Finally, the Rogalla court held that the provision of the agreement that held the plaintiff harmless for the payment of services was not violated by Christie's lien because a physician's lien amounted to a statutory claim against a fund of monies to be paid, not an action against a party. Rogalla, 341 Ill.App.3d at 419-20, 276 Ill.Dec. 489, 794 N.E.2d 384.
First, we note that the Act and the Physician's Lien Act, as well as the lien acts covering other health care professionals, have been repealed and are now replaced by the Health Care Services Lien Act (770 ILCS 23/1 et seq. (West Supp.2003)). Even so, section 35 of the Health Care Services Lien Act (770 ILCS 23/35 (West 2002)) provides:
"A lien validly created under * * * the Hospital Lien Act * * * remains in full force and effect on and after July 1, 2003. Such a lien shall be enforceable according to, and otherwise governed by, the provisions of the Act or Code under which it was created, as those provisions existed in June 30, 2003." 770 ILCS 23/35 (West 2002).
Provena's lien was created under the Act. Therefore, we analyze the validity of Provena's lien under the Act.
Having determined that the Act applies, we must now decide whether we will diverge from our application of the Act in N.C. and allow Provena's lien to stand. Provena contends that our decision in N.C. violates the language of the Act and various public policy principles. However, N.C. does not foreclose the possibility of a hospital receiving less than its reasonable and customary charges as full payment from an injured party and its insurer while still having a valid lien. In N.C. we determined that "the contract between NIMC and One Health extinguished all debts once plaintiff's insurer paid NIMC at the agreed rate." N.C., 305 Ill.App.3d at 775, 239 Ill.Dec. 244, 713 N.E.2d 775. If NIMC's contract with One Health did not extinguish "all debts" a lien would have existed.
In Richmond v. Caban, 324 Ill.App.3d 48, 257 Ill.Dec. 879, 754 N.E.2d 871 (2001), this court decided that a lien could survive despite an agreement by a hospital to accept less than its full reasonable and customary charges as full payment from the injured party and its insurer. In Richmond, the hospital had an agreement with the insurer that it would first seek to recover from the third party tortfeasor before seeking payment from the insurer. Richmond, 324 Ill.App.3d at 50, 257 Ill.Dec. 879, 754 N.E.2d 871. The hospital decided to file a lien against the proceeds of the injured party's lawsuit and never billed the insurer for any services. Richmond, 324 Ill.App.3d at 50, 257 Ill.Dec. 879, 754 N.E.2d 871. We held that a lien did exist because there had been no payment made to the hospital and there was no requirement that the hospital first seek *599 reimbursement from the insurer. Richmond, 324 Ill.App.3d at 51-52, 257 Ill.Dec. 879, 754 N.E.2d 871. Our holding in Richmond demonstrates that hospitals can enter into agreements to accept less than their reasonable and customary charges from insurers and injured parties but retain their other rights, including hospital liens, to recover the balance of their charges.
Provena contends that our decision in N.C. essentially creates a new category of damages by allowing an injured party to recover more than was actually paid to the hospital and that it does a disservice to the public policy of lessening financial burdens on hospitals. As to the former contention, the court in Rogers explained that allowing an injured party to recover such a windfall is not a new category of damages but simply an application of the collateral-source rule. With respect to Provena's latter contention, our decision in N.C. does not violate the public policy of lessening the financial burden on hospitals because, as our decision in Richmond makes clear, hospitals may still enter into contracts which lessen the liability of insurers and injured persons while retaining their rights to recover through hospital liens. N.C. simply gives effect to contracts between insurers and hospitals. We see no reason why such contracts should be ignored simply because, but for such contracts, valid liens would exist. The public policy to lessen financial burdens on hospitals does not encompass relieving hospitals of contractual obligations which they later regret undertaking. Provena also contends that our holding allows recovery of less than the Act mandates. The lien covers only the amounts of the debt owed and our holding in N.C. does nothing to lessen that recovery.
We believe that the Rogalla court read our decision in N.C. too broadly and failed to recognize that N.C. simply gives effect to contracts. A hospital's ability to preserve its lien rights lies within its own hands. If a hospital contracts in such a manner that a debt survives, then the lien will survive also. Our decision in N.C. does not to abrogate a hospital's ability to so contract. We believe our decision in N.C. gives effect to both the contracts that hospitals enter into and the Act. Therefore, we believe our decision is sound. Accordingly, we decline to overturn our previous ruling in N.C., and we reject the court's reasoning in Rogalla.
As to the facts of this case, the contract between Provena and United is not in the record. Consequently, we cannot determine whether the contract extinguishes all debts. However, the appellant has the burden of producing a sufficient record on appeal to support a claim of error. Foutch v. O'Bryant, 99 Ill.2d 389, 391-92, 76 Ill.Dec. 823, 459 N.E.2d 958 (1984). In the absence of a sufficient record, we will presume that the judgment of the trial court conforms to the law and that there are sufficient facts to support the judgment. Foutch, 99 Ill.2d at 391-92, 76 Ill.Dec. 823, 459 N.E.2d 958. Therefore, we will presume that the trial court properly applied N.C. and that Provena's contract with United extinguished all debts. See Meyers v. Hablutzel, 236 Ill.App.3d 705, 708, 177 Ill.Dec. 310, 603 N.E.2d 91 (1992).
Because we have found that the trial court properly extinguished Provena's lien under our holding in N.C., we need not address plaintiff's second contention that because of Provena's statements to plaintiff that he had a zero balance Provena should be equitably estopped from asserting that it is owed monies that can be recovered through the lien.
*600 Next, we turn to plaintiff's cross-appeal of the trial court's denial of his motion for Rule 137 sanctions. We review a trial court's denial of Rule 137 sanctions for an abuse of discretion. Century-National Insurance Co. v. Tracy, 316 Ill.App.3d 639, 651, 249 Ill.Dec. 963, 737 N.E.2d 353 (2000). Plaintiff contends that because Provena argued that it had a valid lien despite clear case law to the contrary, sanctions should have been awarded. We disagree. Rule 137 allows for "a good-faith argument for the extension, modification, or reversal of existing law." 155 Ill.2d R.137. Provena acknowledged in the trial court that N.C. was controlling law but contended that the law should be changed. Provena made several arguments regarding public policy and cited relevant authority in support of its contentions. Therefore, we find that Provena made a good-faith argument for the reversal of existing law and did not violate Rule 137. Accordingly, we affirm the trial court's denial of Rule 137 sanctions.

III. CONCLUSION
For the foregoing reasons, we affirm the orders of the circuit court of Kane County extinguishing Provena's hospital lien and denying plaintiff's motion for Rule 137 sanctions against Provena.
Affirmed.
HUTCHINSON and GROMETER, JJ., concur.
NOTES
[1] We note that, although the court used the word "tortfeasor," we believe the court was actually referring to the windfall that is received by the injured party, because in N.C. the plaintiff received the windfall, not the tortfeasor.