# Illinois Official Reports

## Appellate Court

---

### *Barry v. St. Mary's Hospital Decatur*, 2016 IL App (4th) 150961

---

| | |
|---|---|
| Appellate Court Caption | STEPHAN BARRY, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. ST. MARY'S HOSPITAL DECATUR, an Illinois Not-for-Profit Corporation, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-15-0961 |
| Filed | December 13, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 14-CH-109; the Hon. Thomas E. Little, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Larry D. Drury (argued), of Larry D. Drury, Ltd., of Chicago, for appellant.<br><br>Christopher M. Ellis (argued), Jon D. Robinson, and Shane M. Mendenhall, of Bolen Robinson & Ellis, LLP, of Decatur, for appellee. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion.<br>Justices Turner and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1        This case arises out of a September 2013 automobile accident involving plaintiff, Stephan A. Barry, and a third-party tortfeasor. Following the accident, Barry received medical treatment from defendant, St. Mary's Hospital Decatur, an Illinois not-for-profit corporation (St. Mary's). Barry has health insurance through his employer from Consociate Health Insurance (Consociate). As part of an agreement with Private Healthcare Systems (PHS), Consociate receives a discount from St. Mary's for the amount of Barry's medical bills. Two of Barry's three medical bills were submitted to Consociate for payment. The third bill was never submitted. While Consociate initially denied payment of the two bills on the grounds the injuries were caused by a third party, it later changed its position and paid those bills at the discounted rate. In the meantime, St. Mary's filed liens against Barry's then yet-to-be-determined personal injury settlement pursuant to the Health Care Services Lien Act (Lien Act) (770 ILCS 23/1 to 999 (West 2012)) for the full, *i.e.*, nondiscounted, amount of all three bills.

¶ 2        In May 2014, Barry filed a seven-count complaint against St. Mary's arguing, *inter alia*, the liens against his personal injury settlement were improper where St. Mary's was obligated to bill his health insurance company. Following a motion by St. Mary's, the trial court dismissed Barry's complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-615 (West 2014)).

¶ 3        Barry appeals, arguing the trial court erred in dismissing his complaint where he sufficiently pleaded valid claims for (1) a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 to 12 (West 2012)), (2) breach of contract, (3) "third-party beneficiary," and (4) unjust enrichment. We affirm.

¶ 4                                        I. BACKGROUND

¶ 5        On September 5, 2013, Barry sought treatment at St. Mary's for injuries sustained in a September 4, 2013, motor vehicle accident with a third party. The treatment resulted in three separate medical bills.

¶ 6                                        A. The First Bill

¶ 7        On September 16, 2013, St. Mary's sent bill No. I-694329, for $2194, to Consociate pursuant to a Preferred Facility Agreement (Facility Agreement) between St. Mary's and Consociate, which provides for a contractual discount in the amount of Barry's medical bills incurred at St. Mary's. On October 8, 2013, Consociate denied payment of the bill on the basis a third party caused the accident. On November 11, 2013, St. Mary's sent the invoice and a lien notice to State Farm, *i.e.*, the third-party tortfeasor's insurance company. The lien was for the total amount of services absent any discount. On June 13, 2014, after Barry filed the complaint in this case, Consociate reversed course and paid bill No. I-694329 at the discounted rate of $830.14. The parties agree St. Mary's has yet to release its lien regarding the first bill. As such, a lien for $2194 for bill No. I-694329 remains in place.

## B. The Second Bill

On September 19, 2013, St. Mary's submitted a second bill, No. I-695643, for $1179, to Consociate. Consociate denied payment of the second bill on the same basis it initially denied the first bill. On January 9, 2014, St. Mary's sent the invoice and corresponding lien to State Farm. The lien was for the total amount of services rendered absent any discount. On June 13, 2014, Consociate reversed its position and paid the discounted rate of $515.49. As with the first bill, St. Mary's has not yet released the lien for the full amount of the second bill.

## C. The Third Bill

The third medical bill, No. I-697978, was for $10,574 in services provided to Barry from September 13 to December 3, 2013. St. Mary's maintains Barry told it on September 13, 2013, to bill State Farm directly for these services. St. Mary's submitted the bill and a notice of lien to State Farm on October 7, 2013.

## D. Barry's Complaint

On May 7, 2014, Barry filed a seven-count complaint on behalf of himself and those similarly situated. (We note St. Mary's in fact submitted two of the three bills to Consociate prior to filing its liens. Accordingly, Barry's claims regarding St. Mary's failure to submit his bills to Consociate pertain only to the third bill, which all agree was never submitted.)

Count I alleged St. Mary's violated the Consumer Fraud Act when it "fraudulently misrepresented, concealed, and/or omitted material facts to and from [Barry] as to the fact [it] would not accept [his] health insurance coverage, and/or would place a medical provider's lien for services rendered with either the patient, the patient's attorney, a third-party tortfeasor[,] or the third-party tortfeasor's liability carrier." According to Barry, his damages included a "loss from settlement of those funds claimed by St. Mary's," as well as "the diminished value of [his] health insurance policies by not receiving the benefit of insurance coverage for which [he] pay[s] a premium."

Count II alleged the consent form Barry signed at the time of treatment, which authorized St. Mary's to bill Consociate, was a contract breached by St. Mary's when it placed a lien on his personal injury settlement instead of billing Consociate.

Count III alleged St. Mary's committed the tort of outrage by failing to bill Consociate.

Count IV alleged St. Mary's has been unjustly enriched by placing liens on Barry's personal injury settlement.

Count V alleged a third-party beneficiary claim. According to Barry, St. Mary's violated its agreement with Consociate by refusing to accept his health insurance and/or by placing liens on his personal injury settlement.

Count VI alleged St. Mary's intentionally interfered with the contractual relationship between Barry and Consociate by refusing to honor Barry's health insurance coverage.

Count VII sought an injunction to restrain St. Mary's from continuing to refuse to accept his health insurance and/or from placing liens on his personal injury settlement.

¶ 21                            E. St. Mary's Combined Motion

¶ 22    On July 30, 2014, St. Mary's filed a combined section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2014)) and section 2-1005 motion for summary judgment (735 ILCS 5/2-1005 (West 2014)) pursuant to section 2-619.1 of the Procedure Code (735 ILCS 5/2-619.1 (West 2014)).

¶ 23                            1. *St. Mary's Motion To Dismiss*

¶ 24    In the section 2-615 portion of its motion, St. Mary's argued Barry's complaint should be dismissed where it failed to state any valid causes of action because, according to *Rogalla v. Christie Clinic, P.C.*, 341 Ill. App. 3d 410, 794 N.E.2d 384 (2003), it was entitled to assert a lien against State Farm pursuant to the Lien Act.

¶ 25    In response to St. Mary's motion to dismiss, Barry argued *Rogalla* was factually distinguishable where differences existed in the terms of the discount contract in that case and the Facility Agreement between PHS and St. Mary's in this case. Barry also argued *Rogalla* was contrary to two Second District cases (*N.C. v. A.W.*, 305 Ill. App. 3d 773, 713 N.E.2d 775 (1999), and *Lopez v. Morley*, 352 Ill. App. 3d 1174, 817 N.E.2d 592 (2004)), as well as a federal district court case (*Falls v. Silver Cross Hospital & Medical Centers*, No. 13 C 695, 2013 WL 2112188 (N.D. Ill. May, 15, 2013)).

¶ 26                            2. *St. Mary's Motion for Summary Judgment*

¶ 27    In the summary judgment portion of the motion and supporting memorandum of law, St. Mary's took the position it did not have a contract directly with Consociate. Instead, it maintained it had a Facility Agreement with PHS. Under that agreement, St. Mary's provided billing discounts to those insured through Consociate.

¶ 28    St. Mary's attached a copy of the Facility Agreement to its motion. Section 7.2 of that agreement states, "[Consociate on behalf of PHS] will pay or arrange to pay [St. Mary's] for Covered Care, as full compensation, the Preferred Payment Rate." Section 7.3(b) provides St. Mary's "will not bill or collect from the Covered Individual the difference between the Preferred Payment Rate agreed to in this Agreement and [St. Mary's] regular billing rates." Section 7.5 states, "if [Consociate] is other than primary under the coordination of benefits rules, [St. Mary's] will accept from [Consociate], as payment in full, the amount which when added to amount received by [St. Mary's] from any combination of other sources, equals one hundred percent (100%) of the Preferred Payment Rate." Section 9.5 states, "nothing contained herein will be construed as, or be deemed to create, any rights or remedies in any party other than [St. Mary's or PHS]."

¶ 29    St. Mary's also attached a copy of the consent form Barry signed at the time he sought treatment at St. Mary's. Section III(C) of that form assigns to St. Mary's all of his rights under his health insurance coverage. Section III(D) of that form states, "I understand I am financially responsible for charges not covered in full or in part by [the] Authorizations in Section III(C)."

¶ 30    St. Mary's provided an affidavit from Kathy Carter, the chief financial officer of Barry's employer. Attached to that affidavit was Barry's health insurance plan. According to that plan, Barry's health insurance is intended to be excess coverage in the event Barry is injured by a third-party tortfeasor.

¶ 31    St. Mary's argued section 7.5 of the Facility Agreement allowed it to bill State Farm directly for Barry's treatment. It also argued section 9.5 showed Barry was not an intended third-party beneficiary of the Facility Agreement and therefore had no rights under that agreement.

¶ 32    In his response to the motion for summary judgment, Barry argued a question of fact existed regarding whether St. Mary's breached the Facility Agreement with PHS when it failed to bill Consociate for Barry's treatment and by placing the liens with State Farm for the full amount of the bills. Barry also contended he was an intended and direct third-party beneficiary of the discounted rates for the medical care he received.

¶ 33                           F. Hearing on the Parties' Motions

¶ 34    During the hearing on St. Mary's motion to dismiss, St. Mary's argued this case is entirely controlled by this court's decision in *Rogalla.* According to St. Mary's, *Rogalla* stands for the proposition "it is proper and appropriate for a health care provider to elect to file a lien as opposed to billing health insurance when a person is injured by the conduct of a third party."

¶ 35    In response to St. Mary's contention it did not have an obligation to bill his health insurance, Barry cited the general consent form he signed when he initially sought treatment at St. Mary's. While Barry conceded the consent form "doesn't specifically state that the hospital is definitively obligated to do the billing," he also maintained its language "if not expressed[,] certainly implied that when somebody comes in and pays good money for insurance and substantial premiums that their health [insurance] carrier is going to be billed."

¶ 36    Barry also cited the Facility Agreement between St. Mary's and Consociate to argue St. Mary's was "supposed to" submit his hospital bills to his insurance company. Barry maintained St. Mary's was improperly circumventing the facility agreement. Specifically, Barry argued the following:

> "So, they circumvent their own Facility Agreement where they know that they cannot balance bill. They cannot do it. So by sending the lien out to the third party tortfeasor or [his] insurance carrier *** they are effectively trying to get the 100 percent recovery [they cannot get under the agreement because of its discount provision]."

¶ 37    At the conclusion of the hearing, the trial court took the matter under advisement.

¶ 38                              G. Trial Court's Decision

¶ 39    In its June 3, 2015, written order, the trial court granted St. Mary's motion to dismiss. The court's written order stated the following:

> "[H]aving considered the oral and written arguments of counsel, the relevant authorities, and being fully advised in the premises, the court removes this case from advisement and finds that *Rogalla* *** is dispositive of the issues set forth herein."

The court then allowed St. Mary's section 2-615 motion and dismissed Barry's complaint with prejudice. The court did not address the summary judgment portion of St. Mary's combined motion.

¶ 40    On July 2, 2015, Barry filed a motion to vacate and/or to reconsider, which the trial court denied following an October 29, 2015, hearing.

¶ 41    This appeal followed.

## II. ANALYSIS

¶ 43    On appeal, Barry argues the trial court erred in granting St. Mary's motion to dismiss. Specifically, Barry contends his complaint states valid claims for (1) consumer fraud, (2) breach of contract, (3) "third-party beneficiary," and (4) unjust enrichment.

### A. Propriety of St. Mary's Liens

¶ 45    Barry's complaint is predicated on his contention St. Mary's wrongfully placed liens on his personal injury settlement. As such, we will first address the propriety of the liens.

### 1. *Whether St. Mary's Was Required To Submit the Third Bill to Consociate Prior To Filing a Lien*

¶ 47    The crux of Barry's complaint is his argument St. Mary's was required to first bill his medical insurance before it could attach a lien on his personal injury settlement. Barry's argument requires us to engage in an interpretation of the Lien Act.

¶ 48    When interpreting a statute, our primary objective is to give effect to the legislature's intent. *McVey v. M.L.K. Enterprises, LLC*, 2015 IL 118143, ¶ 11, 32 N.E.3d 1112. The most reliable indicator of that intent is the language of the statute. *McVey*, 2015 IL 118143, ¶ 11, 32 N.E.3d 1112. Statutory language is to be given its plain, ordinary, and popularly understood meaning and afforded its fullest meaning. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308, 776 N.E.2d 218, 223 (2002). When statutory language is unambiguous, we apply the language as written, without looking to other statutory interpretation tools. *McVey*, 2015 IL 118143, ¶ 11, 32 N.E.3d 1112. Statutory construction is a question of law, which we review *de novo*. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 12, 23 N.E.3d 351.

¶ 49    Section 10(a) of the Lien Act, provides, in relevant part, the following:

> "Every health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person. The total amount of all liens under this Act, however, shall not exceed 40% of the verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his or her claim or right of action." 770 ILCS 23/10(a) (West 2012).

¶ 50    The plain language of the Lien Act clearly permits St. Mary's to place liens on all of Barry's "claims and causes of action" for the amount of his hospital bills. The only limitations provided by the statute relate to the total amount recoverable from an injury settlement, *i.e.*, 40%, and whether the provider's charges are reasonable. Notably, the Lien Act does not limit a provider's ability to place liens on a settlement to situations where the recipient of the treatment is without health insurance or where there is no agreement between the provider and insurer for a discounted rate. Barry attempts to read into the Lien Act the requirement a provider must first bill an injured party's health insurance before pursuing a lien. The General Assembly could have included such language in the Lien Act, but it did not. We will not depart from the plain language of a statute by reading into it exceptions,

limitations, or conditions the legislature did not itself express. See *Petersen v. Wallach*, 198 Ill. 2d 439, 446, 764 N.E.2d 19, 23 (2002).

¶ 51 This interpretation is consistent with our decision in *Rogalla*. There, the plaintiff received medical services from Christie Clinic, P.C. (Christie), in connection with an automobile accident. *Rogalla*, 341 Ill. App. 3d at 412, 794 N.E.2d at 387. Christie had an agreement with PersonalCare, which operated the plaintiff's health maintenance organization. *Rogalla*, 341 Ill. App. 3d at 412, 794 N.E.2d at 387. That agreement provided Christie would receive a certain amount each month from PersonalCare, which would be considered full payment for all services provided to PersonalCare members. *Rogalla*, 341 Ill. App. 3d at 412, 794 N.E.2d at 387. As part of the agreement, Christie would not seek additional payment from PersonalCare members beyond copayments and deductibles. *Rogalla*, 341 Ill. App. 3d at 412, 794 N.E.2d at 387. The agreement also contained a subrogation clause that provided Christie would have the right " 'to seek to recover charges incurred as a result of providing Medical/Hospital Services which are the liability of a third party.' " *Rogalla*, 341 Ill. App. 3d at 414, 794 N.E.2d at 389. The plaintiff's personal injury lawsuit resulted in a settlement. While Christie did not seek payment directly from the plaintiff, it asserted a lien against the settlement proceeds pursuant to the Physicians Lien Act (770 ILCS 80/1 (West 2000)). *Rogalla*, 341 Ill. App. 3d at 412-13, 794 N.E.2d at 387.

¶ 52 At the time, the Physicians Lien Act, which has since been repealed and replaced by the current Lien Act, stated the following:

"Every licensed physician practicing in this State who renders services by way of treatment to injured persons *** shall have a lien upon all claims and causes of action for the amount of his reasonable charges up to the date of payment of such damages." 770 ILCS 80/1 (West 2000).

¶ 53 The plaintiff argued the Physicians Lien Act did not apply where a "hold-harmless clause" of the agreement made her liable only for copayments and deductibles, which she maintained she had already paid. *Rogalla*, 341 Ill. App. 3d at 414, 794 N.E.2d at 389. The hold-harmless clause stated the following:

" 'Christie will look solely to PersonalCare for compensation for Covered Services provided to Members, except for copayments authorized by PersonalCare under the applicable Member Certificate relating to Medical Services set forth in Attachment B. *** Neither Christie, Christie Members, nor any authorized Health Services Contractor of Christie shall *** assert any claim for compensation against Members in excess of the copayments authorized by PersonalCare's HMO.' " *Rogalla*, 341 Ill. App. 3d at 415, 794 N.E.2d at 389.

¶ 54 In finding Christie in fact had the right to seek a lien, the *Rogalla* court held the obligation to pay the medical expenses incurred because of the actions of a third-party tortfeasor belonged to the third-party tortfeasor and not the injured party. *Rogalla*, 341 Ill. App. 3d at 418, 794 N.E.2d at 392. The court noted, while the subrogation clause in Christie's contract did not give Christie any new rights, it "reserve[d Christie's] statutory right to seek relief from third-party tortfeasors." *Rogalla*, 341 Ill. App. 3d at 418, 794 N.E.2d at 392. According to *Rogalla*, the hold-harmless clause was not violated because a physician's lien amounts to a statutory claim against a fund of monies to be paid, not an action against a party. *Rogalla*, 341 Ill. App. 3d at 419-20, 794 N.E.2d at 392.

¶ 55 Barry argues this case is distinguishable from *Rogalla* because the Facility Agreement in the instant case does not contain a subrogation clause. However, the absence of such a clause is of no import because even without that clause, the provider still has the right to seek a lien pursuant to the Lien Act. Nothing in the plain language of the Lien Act indicates its applicability depends on the inclusion of a subrogation clause in an agreement between a provider and an insurer.

¶ 56 The plain language of the Lien Act notwithstanding, Barry also argues section 7.1 of the Facility Agreement required St. Mary's to bill Consociate for the treatment he received. Section 7.1, titled "Submission of Claims," states the following:

> "[St. Mary's] will submit claims for payment within sixty (60) days of furnishing health care services. [St. Mary's] will follow the claims submission procedures contained in the administrative handbook(s)."

¶ 57 However, as argued by St. Mary's, where, as here, a third-party tortfeasor is liable for the injuries, section 7.5, titled "Coordination of Benefits" provides the following:

> "If [Consociate] is other than primary under the coordination of benefits rules, [St. Mary's] will accept from [Consociate], as payment in full, the amount which when added to amounts received by [St. Mary's] from any combination of other sources, equals one hundred percent (100%) of the [discounted rate] ***."

¶ 58 Thus, when there is a third-party tortfeasor involved, St. Mary's may seek payment from the third party first. In the event the amount recovered is less than 100% of the discounted rate from the third party, St. Mary's is then entitled to seek the remaining amount from Consociate. This provision comports with section 45 of the Lien Act, which states the following:

> "Nothing in this Act shall be construed as limiting the right of a health care professional or health care provider, or attorney, to pursue collection, through all available means, of its reasonable charges for the services it furnishes to an injured person. Notwithstanding any other provision of law, a lien holder may seek payment of the amount of its reasonable charges that remain not paid after the satisfaction of its lien under this Act." 770 ILCS 23/45 (West 2012).

¶ 59 Thus, St. Mary's did not violate the terms of the Facility Agreement when it attempted to collect payment from the third party instead of Consociate.

¶ 60 Finally, Barry maintains the consent form he signed at the time he received treatment obligated St. Mary's to bill Consociate. However, the consent form does not contain any language requiring St. Mary's to bill a patient's insurance before it can pursue a lien. Notably, during the hearing on St. Mary's combined motion, Barry's counsel conceded the consent form "doesn't specifically state that the hospital is definitively obligated to do the billing." Accordingly, Barry's argument in this regard fails.

¶ 61 In sum, neither the Lien Act nor the consent form nor the Facility Agreement required St. Mary's to bill Consociate prior to seeking a lien for the third bill.

¶ 62 *2. Whether St. Mary's May Maintain Liens for the First Two Bills*
*Where Those Bills Were Submitted to and Paid by Consociate*

¶ 63 The liens for the first two bills were filed after those bills were submitted to and rejected by Consociate. For the reasons discussed in the section above, those liens were proper at the

time they were filed. It was only after the liens were filed that Consociate reversed its position and paid them. Those payments occurred after Barry's complaint was filed and were made at the discounted rate provided for by the Facility Agreement. The question becomes whether St. Mary's may maintain liens for the first two bills after they were paid by Consociate. For the reasons that follow, we find it cannot.

¶ 64 In *N.C.*, the plaintiff filed a personal injury action against the defendant based on injuries he sustained during an automobile accident. *N.C.*, 305 Ill. App. 3d at 774, 713 N.E.2d at 775. The plaintiff's hospital bills totaled $22,551. *N.C.*, 305 Ill. App. 3d at 774, 713 N.E.2d at 775. Plaintiff's insurer paid the hospital $4200 in full payment of plaintiff's medical bills, pursuant to an agreement providing for a discounted rate. *N.C.*, 305 Ill. App. 3d at 774, 713 N.E.2d at 775. The hospital then took a lien pursuant to the Lien Act against the plaintiff's personal injury settlement. *N.C.*, 305 Ill. App. 3d at 774, 713 N.E.2d at 776. The plaintiff filed a petition to adjudicate the lien. *N.C.*, 305 Ill. App. 3d at 774, 713 N.E.2d at 776. The trial court determined the lien should be extinguished because the hospital's contract with the plaintiff's insurer precluded it from collecting more than the discounted rate. *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776. Under that contract, the plaintiff was not liable for any amount, other than deductibles, coinsurance, and copayments, over what was paid by the insurer. *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776.

¶ 65 In affirming the trial court's judgment, the Second District found, because the contract between the hospital and the plaintiff's insurance company extinguished the plaintiff's debt, the hospital no longer had any lien rights, regardless of whether there was a recovery in the personal injury action. *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776. The *N.C.* court reasoned, because "a lien is a legal claim upon the property of another for payment or in satisfaction of a debt," "if there is no debt in the first instance, there is no need for a lien." *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776; see also *Lopez*, 352 Ill. App. 3d at 1181, 817 N.E.2d at 599 (Second District reaffirming the decision in *N.C.*).

¶ 66 In this case, like the debt in *N.C.*, the debt for the first two bills was paid in full by Consociate pursuant to the Facility Agreement at the discounted rate provided for in that agreement. Because there is no longer a debt owed to St. Mary's for those two bills, liens for them can no longer be maintained. See *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776. However, unlike the plaintiff in *N.C.*, Barry never filed a petition to adjudicate the liens, choosing instead to file the complaint underlying this appeal. In its pleading and on appeal, St. Mary's concedes the liens for the first two bills are no longer viable and has stated it does not intend to enforce them. Nevertheless, they remain an encumbrance on Barry's personal injury settlement. St. Mary's should voluntarily withdraw those liens. If not, Barry should file a petition to adjudicate the liens. Based on the representations of St. Mary's and the findings herein, those liens should be extinguished. The debt for those bills was paid in full by Consociate. As such, those liens should be removed. See *N.C.*, 305 Ill. App. 3d at 775, 713 N.E.2d at 776.

¶ 67 With these findings in mind, we now turn to the trial court's dismissal of Barry's complaint.

¶ 68                            B. Dismissal of Barry's Complaint
¶ 69                                1. *Standard of Review*
¶ 70        The purpose of a section 2-615(a) motion to dismiss is to challenge the legal sufficiency of the complaint where defects are apparent on its face. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. The question is "whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted." *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. "The complaint must be construed liberally and should only be dismissed when it appears that the plaintiff cannot recover under any set of facts." *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 14, 13 N.E.3d 350. Our review of the trial court's order granting a motion to dismiss is *de novo*. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. Because we review the trial court's judgment, not its rationale, we may affirm for any reason supported by the record, regardless of the basis cited by the trial court. *In re Estate of Mankowski*, 2014 IL App (2d) 140154, ¶ 40, 30 N.E.3d 1111.

¶ 71                                2. *Consumer Fraud Claim*
¶ 72        Barry argues the trial court erred in dismissing his complaint where he sufficiently pleaded a valid claim for a violation of the Consumer Fraud Act. Specifically, Barry contends his complaint adequately alleged St. Mary's had an undisclosed policy of sending a lien to the third-party tortfeasor's insurance company for the entire amount of the bill instead of the discounted rate. Barry also alleged St. Mary's did not inform Barry it was only entitled to receive the discounted rate for its bills under the terms of its agreement with Consociate and not the total amount of the bill. According to Barry's allegations, St. Mary's was required to submit billing invoices to Consociate for all treatment provided to Barry. Barry maintains this concealment is a deceptive act or practice under the Consumer Fraud Act.

¶ 73        To state a cause of action under the Consumer Fraud Act, a plaintiff must establish five elements: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the deception occured in the course of conduct involving trade or commerce, (4) actual damage to plaintiff, and (5) proximate cause between the deception and the damage. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002); 815 ILCS 505/10a(a) (West 2012).

¶ 74        The Consumer Fraud Act defines a deceptive act as "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2 (West 2012); *DOD Technologies v. Mesirow Insurance Services, Inc.*, 381 Ill. App. 3d 1042, 1051-52, 887 N.E.2d 1, 10 (2008). "A complaint stating a claim under the Consumer Fraud Act must state with particularity and specificity the deceptive [unfair] manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint." (Internal quotation marks omitted.) *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 20, 902 N.E.2d 1163, 1168 (2009).

¶ 75        In this case, for the reasons stated *supra* ¶ 51, St. Mary's did not violate the Lien Act at the time liens were placed on Barry's personal injury settlement. Section 10b(1) of the Consumer Fraud Act, regarding its application, provides it shall not apply to "[a]ctions or

transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 2012); see also *Aurora Firefighter's Credit Union v. Harvey*, 163 Ill. App. 3d 915, 922-23, 516 N.E.2d 1028, 1033-34 (1987) (finding the Consumer Fraud Act did not apply pursuant to section 10b(1)'s exemption, where the failure to make certain disclosures complied with the relevant disclosure requirements). Accordingly, Barry's consumer fraud claim fails.

¶ 76                                    3. *Breach of Contract Claim*

¶ 77    Barry next argues the trial court erred in dismissing his complaint where he sufficiently pleaded a breach of contract claim. Specifically, Barry contends the consent form between Barry and St. Mary's was a contract St. Mary's breached by failing to submit the third bill to Consociate prior to pursuing a lien against his personal injury settlement. We disagree.

¶ 78    To establish a breach of contract, a plaintiff must show the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff. *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732, 911 N.E.2d 378, 397 (2009).

¶ 79    In this case, the consent form does not contain any language requiring St. Mary's to bill Barry's health insurance before it can pursue a lien. In fact, Barry's complaint does not allege such contractual language is contained in the consent form. Moreover, Barry's counsel conceded the consent form "doesn't specifically state that the hospital is definitively obligated to do the billing." Indeed, nothing in the form indicates an intention to require St. Mary's to bill Consociate for Barry's medical bills. At most, the consent form simply authorizes St. Mary's to bill Consociate. Because Barry has failed to demonstrate the existence of a contract with St. Mary's, the trial court did not err in dismissing Barry's breach of contract claim.

¶ 80                                    4. *Third-Party Beneficiary Claim*

¶ 81    Barry titled count V of his complaint "Third[-]Party Beneficiary." In this claim, we understand Barry to be arguing St. Mary's was bound by the terms of the contract it entered into with Consociate to treat patients per the contract's coverage agreement because, as an insured individual, he is an intended or incidental third-party beneficiary of that contract. According to Barry, St. Mary's breached the contract "by refusing to accept [his] health insurance coverage, and/or [by] placing liens on [his] personal injury recovery." As damages, Barry alleged, *inter alia*, the loss of funds from his insurance settlement. We disagree.

¶ 82    "A third-party beneficiary may sue under a contract even when not a party to it, provided the benefit of the contract is direct to him, as opposed to being merely incidental." *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199-200, 721 N.E.2d 605, 612 (1999). "Only third parties who are direct beneficiaries have rights under a contract." *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 646, 568 N.E.2d 365, 374 (1991). "It is not enough that the third party will only reap incidental benefits from the contract." *155 Harbor Drive Condominium*, 209 Ill. App. 3d at 646, 568 N.E.2d at 374. Instead, " '[t]he test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract.' " *155 Harbor Drive Condominium*, 209 Ill. App. 3d at 646, 568 N.E.2d at 374 (quoting *Wheeling Trust & Savings Bank v. Tremco*

- 11 -

*Inc.*, 153 Ill. App. 3d 136, 140, 505 N.E.2d 1045, 1048 (1987)). There is a strong presumption against conferring benefits to noncontracting third parties. See *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1007, 830 N.E.2d 636, 642 (2005). " ' "In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." ' [Citations.]" *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 96, 865 N.E.2d 228, 235 (2007).

¶ 83     In this case, section 9.5 of the Facility Agreement expressly states Barry is not an intended third-party beneficiary. Specifically, section 9.5, titled "Third Party Beneficiaries," states the following:

> "Nothing contained in this Agreement will be construed to make [PHS] or [St. Mary's] *** liable to persons or entities not parties hereto in situations in which they would not otherwise be subject to liability, provided however, that [PHS] and [St. Mary's] agree [Consociate] is a third party beneficiary to this Agreement. Except as provided in the preceding sentence, nothing contained here will be construed as, or be deemed to create, any rights or remedies in any party other than [PHS] or [St. Mary's]."

¶ 84     Thus, the Facility Agreement makes it clear and unequivocal Barry was not a third-party beneficiary of the contract. Accordingly, Barry's claim in this regard fails.

¶ 85                              *5. Unjust Enrichment Claim*

¶ 86     Finally, Barry argues he adequately alleged St. Mary's would be unjustly enriched by placing liens on his personal injury settlement.

¶ 87     To state a cause of action for unjust enrichment, a plaintiff must allege the defendant unjustly retained a benefit to the plaintiff's detriment and the defendant's retention violated the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). Our supreme court has discussed the unjust enrichment concept as follows:

> "Many unjust-enrichment cases involve 'situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant.' [Citation.] The situation in this case, however, is different in that the plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party. In such situations, courts have found that retention of the benefit would be unjust where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead [citation], (2) the defendant procured the benefit from the third party through some type of wrongful conduct [citation], or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant [citation]." *HPI Health Care*, 131 Ill. 2d at 161-62, 545 N.E.2d at 679.

¶ 88     The first scenario does not apply in this case. For the reasons discussed *supra* ¶ 51, scenario two also does not apply. The question then necessarily becomes whether Barry has a better claim to the benefit, *i.e.*, the portion of the settlement funds sought by the liens.

¶ 89     With regard to the third lien, St. Mary's is seeking the value of the services it provided. Thus, it cannot be said St. Mary's would be unjustly enriched by pursuing a lien for the third bill. Regarding the first two liens, St. Mary's pursued them only after Consociate refused to

pay the corresponding bills. After Barry filed his complaint, Consociate paid those bills. We recognize St. Mary's has taken no action to remove those liens. However, we also note Barry did not move to amend his complaint to argue St. Mary's would be unjustly enriched by *maintaining* the liens after Consociate paid the bills. As such, Barry's complaint alleges only St. Mary's improperly *placed* the liens on his settlement, which, for the reasons discussed, it did not. As a result, Barry's complaint fails to allege a valid claim for unjust enrichment. The trial court did not err in dismissing Barry's complaint.

¶ 90                                    III. CONCLUSION
¶ 91          For the reasons stated, we affirm the trial court's judgment.

¶ 92          Affirmed.